# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ronald A. Guzman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 96 C 7882 | **DATE** | 5/31/2000 |
| **CASE TITLE** | FRANK P.,et al vs. NEW YORK LIFE INSURANCE CO.,et al | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER: New York Life's motions to dismiss Count VII [184-1] is denied. New York Life's motion to dismiss plaintiffs' second amended complaint [168-1] is denied as to Counts VIII and XVI and granted as to Counts XIV and XXI. New York Life's motion for an extension of time in which to respond to plaintiffs' second amended complaint [171-1] is granted to ten days after the date of this order. USG and Marilyn Lewis are hereby added as parties under Fed.R.Civ.Proc. 21 and New York Life's motions to strike and dismiss these two parties as well as Count XXIII [172-1 & 172-2] are denied. The August trial date set earlier this month remains firm.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | number of notices | Document Number |
| | No notices required. | | |
| | Notices mailed by judge's staff. | | |
| | Notified counsel by telephone. | JUN 0 1 2000 | |
| ✓ | Docketing to mail notices. | docketing deputy initials | 239 |
| | Mail AO 450 form. | | |
| | Copy to judge/magistrate judge. | | |
| TBK | courtroom deputy's initials | date mailed notice | |
| | Date/time received in central Clerk's Office | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

FRANK P. AND JEAN M. SORANNO,
et al.,

               Plaintiffs,

NEW YORK LIFE INSURANCE CO,
et al.,

               Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)

No. 96 C 7882

**DOCKETED**

**JUN 0 1 2000**

## MEMORANDUM OPINION AND ORDER

Pending are the following motions filed by Defendant New York Life: (1) motion to dismiss Counts VIII, XIV, XVI and XXI of plaintiffs Frank P. and Jean M. Soranno's, et al.'s second amended complaint pursuant to Fed. R. Civ. Proc. 12(b)(6); (2) motion to dismiss Count VII of plaintiffs' second amended complaint; (3) motion for an extension of time to file its answer as well; and a (4) motion to strike and dismiss Marilyn Lewis and USG as parties (Count XXIII) to this lawsuit. For the reasons set forth below New York Life's motion to dismiss Count VII is denied, its motion to dismiss Counts VII, XIV, XVI, and XXI is denied in part and granted in part, its motion to dismiss parties Marilyn Lewis and USG and Count XXIII is denied, and its motion for an extension of time to file its answer is granted to ten days after the date of this Memorandum Opinion and Order.

1

## BACKGROUND FACTS

The following facts are taken from plaintiffs' second amended complaint dated April 1, 1999. For purposes of review, we will accept plaintiffs' allegations as true. Plaintiffs are individual investors, most of whom are Illinois residents. From 1987 to 1995 they gave money to defendant David Freitag to purchase insurance policies, annuities, and/or mutual fund investments. Plaintiffs allege that they suffered losses as a result of a fraudulent scheme conducted by Freitag.

During this 1987-1995 time period, Freitag worked as an agent for two different groups of insurance companies. From 1987 to December 1992, Freitag worked as an insurance and sales agent for New York Life Insurance Company and New York Life Insurance and Annuity Corporation. Between at least 1987 and 1995 Freitag was also a sales agent for USG and sold life insurance policies and annuities on behalf of USG. Eventually, New York Life discovered irregularities in Freitag's customer's accounts and fired him in December 1992.

From December 1992 until sometime in 1994, Freitag worked as an insurance and sales agent for Lincoln National Life Insurance Co. and CMP Financial Services, Inc. ("Lincoln/CMP"). When he moved to Lincoln/CMP Freitag persuaded a number of plaintiffs to transfer their accounts from New York Life to Lincoln/CMP, and by September 1993, a number of plaintiffs had transferred their accounts over to Lincoln/CMP. While at Lincoln/CMP, Freitag sold plaintiffs mutual funds in addition to life insurance policies and annuities. In addition to bringing over his New York Life clients, Freitag also obtained new clients while at Lincoln/CMP.

2

Eventually, Lincoln/CMP discovered irregularities in Freitag's customers accounts and fired him. After leaving Lincoln/CMP, Freitag worked on his own as an insurance and sales agent and continued to find new clients.

Freitag's general culpability is not in dispute. He has been convicted of fraud, has never appeared in this action, and subsequently defaulted. He is now serving time in federal prison. Instead, this lawsuit focus on the potential liability of New York Life, Lincoln/CMP and USG. Generally, the second amended complaint alleges that Freitag worked as an insurance and sales agent for each company, that he received office space and secretarial support, and that he was supervised by someone at each company. The second amended complaint alleges that each insurance company "held itself out to the general public as a company that sold life insurance policies, annuities, and offered other investment opportunities through its registered agents, one of whom was Freitag.

The second amended complaint alleges three types of wrongdoing by Freitag. First, the complaint alleges that, in order to induce plaintiffs to invest in the insurance policies, annuities, and mutual fund investments, Freitag made false representations regarding the safety and expected performance of these investments. Second, the complaint alleges that Freitag tampered with plaintiffs' accounts by withdrawing money over forged signatures and by transferring money between different accounts without plaintiffs' permission or knowledge. Finally, the complaint alleges that Freitag concealed the true nature of plaintiffs' investments by sending plaintiffs false monthly statements that overstated the balances in their accounts, listed no surrender charges for the policies which was false and the total life insurance benefits listed were

3

false. Freitag also began to transfer money between the different accounts without their knowledge or consent and retained additional sums as surrender charges which were also deducted from the policy owners accounts. In some instances New York Life subsequently reversed the transaction but failed to inform plaintiffs of the improper transactions. New York Life also failed to check to see if the signatures involved with those transactions were genuine nor did it impose controls to check the genuineness of the signatures.

**Misrepresentations at the Time of Purchase**

The complaint alleges that Freitag made certain misrepresentations at the time plaintiffs gave him money to purchase the various financial products. Specifically, with regard to the annuities sold while at New York Life, Freitag falsely represented that the principal amounts of the annuities were "safe and secure," that plaintiffs would receive interest payments, and that the interest earned would be at least 19.5%. He also represented that the initial deposits of funds for the annuity would cover all costs of the annuity and no other funds would have to be deposited. With regard to the life insurance policies sold while at New York Life, Freitag falsely represented that plaintiffs would never have to pay premiums on their policies to keep them in effect, that the principal and interest earned would be sufficient for retirement, that the life insurance policies were primarily investment vehicles designed to earn non-taxable income on the principal amount, and there was a guarantee the policies would never lapse. As a result of Freitag's misconduct, many plaintiffs lost all their money because their policies lapsed when the premiums were not paid.

4

The complaint contains similar allegations regarding Freitag's work while at Lincoln/CMP. Starting in December 1992, Freitag allegedly persuaded plaintiffs to invest with Lincoln/CMP rather than New York Life. Freitag falsely represented to plaintiffs that Lincoln/CMP was offering a higher rate of return on their investments than New York Life, that they would not lose any of their principal, and that the interest earned on their policies would again pay the premiums. He also issued statements on Lincoln/CMP letterhead which reflected inflated balances in plaintiffs' accounts. There was a supervisor in charge of Freitag during his employment at Lincoln/CMP. Sometime in October or November of 1994 Lincoln/CMP discovered the statements that Freitag had caused to be issued to the plaintiffs reflecting the account balances. Lincoln/CMP did not inform any of Freitags' customers of the problems with their statements or that Freitag had been fired. After he left Lincoln/CMP Freitag continued to solicit new customers, to invest in American Mutual Funds, but failed to disclose that he was fired from Lincoln/CMP. Freitag also represented-as he had done while at New York Life- that the life insurance policies and annuities were investment opportunities to earn high non-taxable interest on the principal payments. Finally, while at Lincoln/CMP, Freitag allegedly induced plaintiffs to purchase interests in a mutual fund by falsely representing that this investment was safe and would generate high returns on principal and by representing that plaintiffs would not lose their principal investment. As a result of Freitag's apparent success many customers invested in both insurance policies and mutual funds with Freitag after he was fired.

The complaint does not allege that either New York Life or Lincoln/CMP were immediately aware of the alleged misrepresentations made by Freitag nor does it allege that either

of these defendants participated actively in the sale of the insurance policies, annuities, and mutual funds. It does allege, however, at some point in time New York Life and Lincoln/CMP became aware of such. While acting as an agent at USG Freitag apparently made similar misrepresentations at the time of purchase.

**Unauthorized Withdrawals and Transfers**

The complaint alleges that money was withdrawn from plaintiffs' accounts by means of their forged signatures and that money was transferred between their accounts in order to pay the premiums on the plaintiffs' insurance policies. These allegations appear to relate solely to the time period Freitag was at New York Life and thus do not concern Lincoln/CMP. Although the second amended complaint is not specific with regard to who initiated this process, the complaint states that New York Life executed these transactions. However, the complaint does not specifically state that New York Life was aware of the unauthorized nature of these transfers at the time they were made nor that New York Life made them in order to defraud plaintiffs. The complaint alleges that New York Life eventually reversed the unauthorized transfers relating to plaintiff N. Lewis but never reversed the other transactions nor informed the other plaintiffs of the irregularities in their accounts. It appears that New York Life fired Freitag shortly after New York Life discovered the account irregularities.

The complaint also alleges that New York Life executed the transfers but failed "to check to see if the signatures were genuine, nor did it impose any controls to check the genuineness of the signatures or notary of the signature."

6

### Sending False Monthly Account Statements

The complaint alleges that Freitag sent plaintiffs' false account statements concerning the status and performance of their investments. Beginning in 1991, Freitag began sending out monthly statements to the plaintiffs who had invested with him. Freitag did so on behalf of New York Life and as an agent of New York Life. The monthly statements allegedly were false and misleading in that, among other things, they contained a false statement of the cash value of the particular insurance policy, a false statement of the interest credited for the policy and a false statement of the total life insurance benefits. The monthly statements were sent on New York Life letterhead and listed Freitag as "Agent" for New York Life. The complaint attaches samples of those letters as Exhibit A. Similar false statements were sent on Lincoln/CMP letterhead during the relevant period. The complaints attaches samples of those letters as Exhibit B.

The complaint alleges that both New York Life and Lincoln/CMP fired Freitag for irregularities in his customers' accounts but that the defendants never informed any of the plaintiffs of such irregularities.

The complaint also alleges the following facts concerning public knowledge of Freitag's allegedly fraudulent behavior. As already noted, on or about November 9, 1993, the NASD filed a formal complaint against Freitag alleging that in 1991 he arranged to have funds transferred from one annuity account at New York Life to other accounts to pay for life insurance premiums. On or about October 7, 1994, Freitag allegedly consented to a disciplinary order by the Illinois Department of Insurance. On October 5, 1995 Freitag filed for bankruptcy under Chapter 11. On

or about March 1, 1996, Freitag was arrested and charged with 30 counts of fraud, theft by deception and financial exploitation of the elderly. Freitag was eventually convicted and is now serving time in federal prison.

## DISCUSSION

In considering a Rule 12(b)(6) motion to dismiss, this court must accept as true all well pleaded factual allegations in the complaint and view them, along with all reasonable inferences to be drawn from them, in the light most favorable to the plaintiff. *Cornfield v. Consolidated High School District No. 230,* 991 F. 2d 1316, 1324 (7th Cir. 1993). A motion to dismiss may be granted only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L. Ed 2d 80 (1957). A plaintiff may plead conclusions but those conclusions "must provide the defendant with at least minimal notice of this claim." *Jackson v. Marion County,* 66 F. 3d 151, 154 (7th Cir. *1995).*

## COUNT VII
### FRAUD

Count VII of plaintiffs' second amended complaint seeks relief for common law fraud under Illinois law against New York Life. Plaintiffs make two general types of fraud allegations. First, plaintiffs allege that "New York Life, through its agent, Freitag, made false and misleading statements of material fact" as set forth in paragraphs 61 and 65. Paragraph 61 details the misrepresentations made by Freitag to plaintiffs at the time they purchased life insurance

policies. Paragraph 65 states that Freitag sent out false monthly account statements. Second, plaintiffs allege that New York Life "failed to inform the plaintiffs....of the conduct of Freitag while Freitag was employed by New York Life." Judge Nordberg refused to dismiss the first type of fraud based upon his conclusion that plaintiffs had set forth a claim under §10(b) of the 1934 Securities and Exchange Act. With regard to the second type of fraud, the fraud by omission, Judge Nordberg found that the plaintiffs had failed to set forth sufficient facts to establish the defendants had a duty to speak. The court dismissed with prejudice this second portion of plaintiffs' fraud claim relating to New York Life's alleged duty to speak. Upon reconsideration, Judge Nordberg dismissed this claim without prejudice.

New York Life moves to dismiss Count VII a second time arguing that plaintiffs' fraud by omission allegations are so intertwined with the allegations of fraudulent misrepresentations that the entire count should be dismissed and plaintiffs instructed to file a fraud claim limited to the allegations of affirmative misrepresentations. New York Life points out that plaintiffs' amended fraud claim is a verbatim copy of the original count, except for the addition of a single sentence: "New York Life, having actual knowledge of the misrepresentation of its agent, and of the plaintiffs' reliance on such misrepresentations, had a duty to correct these misrepresentations." New York Life contends that the New York Life plaintiffs have failed to allege a claim for fraudulent omission because there is no allegation that New York Life had the opportunity to make any disclosures in time to prevent the plaintiffs' losses and that New York Life's omissions occurred under circumstances which failed to create an opportunity to speak. New York Life argues that plaintiffs' position, that once New York Life discovered a defalcation

in a single Freitag account ( for which he was immediately fired), amounted to discovery of his entire fraudulent scheme is not supported by any law.   Finally, New York Life argues that a number of plaintiffs never conducted business with New York Life  and hence a duty to speak never arose as to that group of plaintiffs.

As our Court of Appeals has previously stated Rule 9(b) does not require that the complaint explain the plaintiff's theory of the case but only that it state the misrepresentation , omission, or other action or inaction that the plaintiffs claim was fraudulent. *DiLeo v. Ernst & Young,* 901 F.2d 624, 627 (7th Cir 1990), see also *Bankers Trust Co. v. Old Republic Ins. Co.* 959 F.2d 677, 682-83 (7th Cir. 1992).  Under Illinois law, a plaintiff claiming that the defendant failed to make a representation when it should have must "plead and prove a duty on behalf of [the defendant] to make an affirmative statement." *Coca Cola Co. Foods Division v. Olmarc Packaging Co.,* 620 F. Supp. 966, 973 (N.D. Ill. 1985) citing *Cummings v. Dusenbury,* 129 Ill. App. 3d 338, 84 Ill. Dec. 615, 472 N.E. 2d 575, 581 (2d Dist. 1984) (other citations omitted.). This duty generally arises in two circumstances: "1) when the defendant's acts contribute to the plaintiff's misapprehension of a material fact and the defendant intentionally fails to correct plaintiff's misapprehension, and 2) when the defendant owes a fiduciary duty to the plaintiff to make complete disclosure and fails to correct a misapprehension of material fact. *Coca Cola,* 620 F. Supp. at 973, *citing Obermaier v. Obermaier,* 128 Ill. App. 3d 602, 83 Ill. Dec. 627, 470 N.E. 2d 1047, 1051 (1st Dist. 1984). From our review of the pleadings we cannot say that plaintiff can prove no set of facts within the framework of the complaint to establish defendant's duty to make an affirmative statement. We therefore deny New York Life's renewed motion to dismiss

10

plaintiff's fraud by omission theory of liability.

Because we have decided that plaintiffs have failed to sufficiently plead facts to support the existence of a fiduciary duty on the part of New York Life, plaintiffs must show that New York Life meets the requirements of the first relationship outlined above. In order to show such a relationship, plaintiffs must have alleged that 1) the acts of New York Life contributed to plaintiffs' misapprehension 2) of a material fact 3) which New York Life intentionally failed to correct. See *Coca Cola*, 620 F. Supp. at 974. Taking all of the allegations in the second amended complaint as true and drawing all reasonable inferences in favor of the plaintiffs we find that plaintiffs have sufficiently alleged facts to establish these elements, and we must deny New York Life's motion to dismiss.

Plaintiffs allege that Freitag fraudulently induced the plaintiffs to invest money in New York Life and New York Life, at some point in time, became aware of this fraudulent conduct. Plaintiffs further state to the extent New York Life had no contemporaneous knowledge of this fraud, it is because New York Life was negligent in supervising and retaining Freitag. Plaintiffs argue as soon as New York Life learned of the material fact that one of its agents was engaged in fraudulent conduct it was under duty to correct these misstatements, but it intentionally failed to correct plaintiffs' perception as to Freitag's real character and actions. For pleading purposes these allegations satisfy all three elements necessary to establish a duty to disclose, and plaintiffs have sufficiently alleged a claim for fraud by omission in this case. New York Life, moving from procedure to substance, attempts to argue that the alleged omission is not actionable especially as to the plaintiffs who were not customers of New York Life but we need not resolve this issue for

purposes of this motion to dismiss.

New York Life's reliance on *Lidecker v. Kendall College,* 194 Ill. App. 3d, 309, 141 Ill. Dec. 75, 550 N.E. 2d 1121(1st Dist. 1990), for the proposition that a plaintiff alleging fraud committed by an intentional concealment of a material fact must show "the existence of a fiduciary relationship, which would raise a duty to speak" is misplaced. Plaintiffs have traveled the alternate route of establishing the existence of specific circumstances. Furthermore, the statement relied on by the defendants in *Lidecker* was a misstatement of the law as set forth in *Salisbury v. Chapman Realty,* 124 Ill. App. 3d 1057, 80 Ill. Dec. 336, 465 N.E. 2d 127 (1st Dist. 1984) and *Zimmerman v. Northfield Real Estate, Inc.* 156 Ill. App. 3d 154, 109 Ill. Dec. 541, 510 N.E. 2d 409 (1st Dist. 1986), *appeal denied,* 116 Ill. 2d 578, 113 Ill. Dec. 320, 515 N.E. 2d 129 (Ill. 1987). Because plaintiffs have met the pleading requirements set forth above, we must deny New York Life's motion to dismiss.

New York Life further argues that Count VII must be dismissed because plaintiffs fail to allege that no plaintiff can establish loss causation for their claims of fraudulent omission. New York Life asserts that the allegations of the complaint establish only "but for" causation, but not "loss causation" However, its own authorities establish that loss causation is merely a label for the "link between the defendant's misconduct and the plaintiff's economic loss. *Robbins v. Kroger Properties, Inc.,* 116 F. 3d 1441, 1447 (11th Cir. 1997) *quoting Rousseff v. E.F. Hutton Co., Inc.,* 843 F. 2d 1326, 1329 n. 2 (11th Cir. 1988). Here, plaintiffs have alleged that their losses, at least in part, were caused by New York Life's conduct. Even in *Caremark, Inc. v. Coram Healthcare Corp.,* 113 F. 3d 645, 649 (7th Cir. 1997), the very case upon which New

12

York Life relies, Caremark pleaded that its injury was caused by its reliance on the very fact

which Coram misrepresented, and that allegation was sufficient for purposes of a motion to

dismiss. Illinois courts have "consistently and emphatically held that plaintiff's injuries in fraud

actions must directly and proximately result from defendants' misrepresentations and cannot be

assessed upon mere speculation or hypothetical assumptions." *State Sec. Ins. Co. v. Frank B. Hall*

*& Co.,* 258 Ill. App. 3d 588, 196 Ill. Dec. 775, 630 N.E. 2d 940, 944 (1st Dist. 1994) *citing*

*Spiegel v. Sharp Electronics Corp.,* 125 Ill. App. 3d 897, 81111. Dec. 238, 466 N.E. 2d 1040,

1044 (Ill. App. 1984). Causation is a factual issue which will be addressed in more detail as this

litigation moves forward. Accordingly, the allegations are sufficient to survive a motion to

dismiss.

**COUNT VIII**
**FAILURE TO SUPERVISE, NEGLIGENT RETENTION**

Defendant New York Life argues that Count VIII of plaintiffs' second amended

complaint should be dismissed. In Count VIII plaintiffs allege tort claims against New York Life

for failing to supervise Freitag and the negligent retention of Freitag. In February of last year

Judge

Nordberg refused to dismiss this count in part, after analyzing *Moorman Manufacturing Co. v.*

*Nat'l Tank Co.,* 91 Ill. 2d 69, 435 N.E.2d 443 (1982) and the numerous cases interpreting it.

Judge Nordberg dismissed plaintiffs' alleged negligent supervision claims to the extent they

related to Freitag's actions in selling the insurance contracts and annuities. However, as to the

other alleged negligent conduct, especially the forged withdrawals and transfers, Judge Nordberg concluded that these actions did not appear to be included within the terms of the parties' contracts.

New York Life argues that plaintiffs' renewed negligence claims explicitly arise under the terms of the parties' contracts. New York Life contends that the facts alleged in support of Count VIII (the negligent supervision and retention count) are the same facts alleged in support of plaintiffs' Count XVI (the breach of contract count). New York Life points out that plaintiffs have amended paragraph 177 of their breach of contract count to add the language *"and make appropriate payments out of the plaintiffs' accounts."* By adding this allegation of contractual duties, New York Life contends that this language has repositioned their claim so that it is now barred in its entirety by *Moorman.*

We disagree. Plaintiffs' alleged tort claims for the negligent supervision and retention of Freitag involve the alleged negligent conduct that took place once the annuities, life insurance policies and mutual fund investments accounts were funded. This includes, but is not limited to, the forged withdrawals and transfers, the false monthly statements and the manipulation of plaintiffs' accounts. As stated in *Choi v. Chase Manhattan Mortgage Co.,* 63 F. Supp. 2d 874 (N.D. Ill. 1999) (citing *Collins,* 154 Ill. 2d at 51, 180 Ill. Dec. 672, 607 N.E. 2d at 1186) "Contract law applies to voluntary obligations freely entered into between parties,"...... "Tort law, on the other hand, applies in situations where society recognizes a duty to exist wholly apart from any contractual undertaking. Tort obligations are general obligations that impose liability when a person negligently, carelessly or purposely causes injury to others." *Choi* at 884. The conduct

14

plaintiffs complain of in paragraphs 61-74 of the background section of their complaint relate to Freitag's use of false monthly statements, the fraudulent transfers, the forged signatures, the lapse of policies for non-payment of premiums when plaintiffs were told such payments were not necessary to maintain the life of the policy. These facts are alleged in support of plaintiffs' position that New York Life had a duty wholly apart from the duties and obligations set forth in the contracts, to supervise its agent once an account was established. As stated in *Congregation of Passion, Holy Cross Province v. Touche Ross & Co.,* 159 Ill. 2d 137, 162, 201 Ill. Dec. 71, 633 N.E. 2d 503 at 154 (1994) accountants, like lawyers, have a duty to observe reasonable professional competence that exists independently of any contract." Moreover, the conduct plaintiffs complain about in Count VIII is not the same conduct and/or alleged breaches complained of in paragraph 177 of their complaint. In paragraph 177 they allege that New York Life failed to make appropriate payments out of plaintiffs' accounts, to properly invest money on behalf of plaintiffs and to pay plaintiffs the cash value of their contracts as represented on the statements sent to them. This pleading is not fatally inconsistent as found under *CEO Marketing Promotions v. Heartland Promotions,* 739 F. Supp. 1150, 1152-53 (N.D. Ill. 1990).

Because we have concluded that plaintiffs have set forth sufficient facts to support their tort claim, we cannot dismiss the punitive damage claim at this time. Accordingly, New York Life's motion to strike the punitive damages claim is denied.

## COUNT XIV
## BREACH OF FIDUCIARY DUTY AGAINST NEW YORK LIFE

New York Life moves to dismiss Count XIV of plaintiffs second amended complaint which alleges that New York Life breached its fiduciary duty under Illinois law to plaintiffs. Plaintiffs argue that a fiduciary relationship arose because New York Life held Freitag out as its agent and an expert in financial matters, including life insurance policies, annuities, and securities. Plaintiffs further allege that many of the plaintiffs placed their trust in Freitag and that New York Life accepted the trust and confidence of the plaintiffs in financial matters.

A fiduciary relationship may arise as a matter of law by virtue of the parties relationship, e.g., attorney-client, or it may arise as a result of the special circumstances of the parties' relationship where one places trust in another so that the latter gains superiority and influence over the former. *In re Estate of Rothenberg,* 176 Ill. App. 3d 176, 179, 125 Ill. Dec. 739, 741, 530 N.E.2d 1148, 1150 (1988). Plaintiffs primarily argue that a fiduciary relationship arose between plaintiffs and New York Life because of their relationship with Freitag. Plaintiffs complaint, however, is completely silent as to facts supporting a fiduciary relationship between New York Life and plaintiffs. The complaint still fails to allege facts which establish as a result of plaintiffs' age, health, education or business experience, that a position of dominance or control came into existence with New York Life. Rather statements such as "a number of Freitag' s clients were elderly," "Freitag accepted the trust and confidence of plaintiffs," "members of the same family used Freitag," or "plaintiffs were unable to conduct their own affairs" are generally alleged but these statements are insufficient to allege that a fiduciary relationship developed with New York Life just because New York Life had discretion over the management of their accounts. In fact,

plaintiffs later allege in their complaint that many of them left New York Life upon Freitag's departure based upon their relationship with Freitag. Because the relevant policy considerations inherent in a finding of a fiduciary relationship, e.g. one party's dominance over the other or the placement of trust and confidence in another are critical to establishing such a relationship rather than the relationship of ordinary good faith and fair dealing which traditionally arises in a contract situation it cannot be concluded that plaintiffs' complaint sufficiently sets forth facts to support a fiduciary relationship with New York Life. Therefore, this court will grant New York Life's motion to dismiss Count XIV with prejudice.

**COUNT XVI**
**BREACH OF CONTRACT**

Count XVI of plaintiffs' second amended complaint sets forth a claim for breach of contract against New York Life. New York Life contends that this claim is deficient because plaintiffs have failed to allege that plaintiffs performed all the contractual conditions required of plaintiffs. According to New York Life, plaintiffs are attempting to allege a breach of contract claim against New York Life based on New York Life's failure to pay them the cash value represented, not in the policies or annuities, but in "statements sent to them by New York Life." It is true, as Defendants point out, that Count XVI of plaintiffs' complaint is somewhat confusing, but for now we decline to dismiss this breach of contract count. Paragraphs 61-74 set forth facts detailing the alleged breaches to plaintiffs' accounts which for pleading purposes are sufficient to survive this motion to dismiss. The issue of plaintiffs' failure to perform all contractual

conditions required of plaintiffs goes to the issue of Freitag's apparent authority and plaintiffs'

reliance on Freitag's misrepresentations. Accordingly, New York Life's motion to dismiss Count

XVI is denied.

## COUNT XXI
## RICO CONSPIRACY

Count twenty one of plaintiffs' second amended complaint alleges a RICO conspiracy

under §1962(d). At the outset, we agree with defendants that plaintiffs have inappropriately

attempted to replead their original RICO counts (Count I and II) which were dismissed with

prejudice by Judge Nordberg in his February 22, 1999 opinion. The same facts supporting Counts

I and II are being alleged in support of Count XXI but now plaintiffs claim that the section of

RICO which was violated was 18 U.S.C. §1962(d).

To state a claim for conspiracy under §1962(d), a plaintiff must allege "(1) that each

defendant agreed to maintain an interest in or control of an enterprise or to participate in the

affairs of an enterprise through a pattern of racketeering activity, and (2) that each defendant

further agreed that someone would commit at least two predicate acts to accomplish those goals."

*Goren v. New Vision Int'l, Inc.,* 156 F. 3d 721, 732 (7th Cir. 1998). The complaint need not allege

that each defendant agreed personally to commit two predicate acts but rather need only allege

that each defendant agreed to "participate in an endeavor which, if completed, would constitute a

violation of RICO." *Id.* at 73 1-32. In *Goren v. New Vision International, Inc.,* the Seventh

Circuit affirmed the dismissal of the plaintiff's complaint because it failed to allege any "facts

indicating an agreement by the [defendants] as to which roles they would play in the enterprise"

or any agreement by the defendants that someone would commit two specific predicate acts on behalf of the enterprise. *Id* at 732. Similarly, in this case before us, plaintiffs' complaint fails to allege with specificity any agreement among the defendants to participate in an endeavor that would constitute a violation of RICO. Paragraphs 201-207 states that NEW YORK LIFE, FREITAG, and DAVID FREITAG entered into a conspiracy to violate Section 1962(a) through (c), when they transferred funds without the policyholders' permission, invested the proceeds from the aforesaid racketeering activities, failed to inform plaintiffs that Freitag had been fired for stealing, and had knowledge that Freitag had sent through the United States mail statements to policy owners that misrepresented the value of their policies. However, nothing in these paragraphs nor any other portion of the complaint sets forth any facts indicating an act of agreement among the alleged conspirators as to an agreed upon goal or as to what roles the various defendants played in the conspiracy. The complaint fails to allege when the agreement to conspire was entered into and there is no allegation that New York Life agreed to receive income from the alleged racketeering activity. Plaintiffs do set forth the methodology of the alleged conspiracy which was the transferring of funds and mailing of the false statements between accounts but these facts only generally refer to actions by Freitag and do not specify what roles or objectives or predicate acts were agreed to by any of the defendants. Plaintiffs' complaint in general attributes all of Freitag's fraudulent conduct to New York Life, ostensibly under a agency theory. But the complaint contains no allegations that New York Life knew of or agreed to Freitag's fraudulent conduct. It does state that New York Life failed to inform plaintiffs of

Freitag's illegal conduct after they fired him but this in and of itself fails to set forth facts which support any agreement among the defendants to participate in an endeavor that would constitute a violation of RICO. Absent such particular pleadings, plaintiffs' complaint contains nothing more than "conclusory, vague and general allegations of a conspiracy" which are insufficient to state a claim under § 1962(d) *Goren,* 156 F. 3d at 733. We therefore dismiss Count XXI of plaintiffs' amended complaint with prejudice.

## ATTORNEYS' FEES

New York Life finally move to strike plaintiffs' common law claims for attorneys fees arguing that attorney fees are not available under any of these causes of actions citing *Ash v. Georgia Pacific Corp.,* 957 F. 2d 432, 438-39 (7th Cir. 1992). Plaintiffs raise no arguments in opposition to this motion to strike, thus it is hereby granted with prejudice.

## MOTION TO STRIKE AND DISMISS LEWIS AND USG

As to New York Life's motion to strike and dismiss Marilyn Lewis and USG this motion is denied. As New York Life argues Federal Rule 21 requires a court order to add or drop parties. Fed. R. Civ. Proc. 21. Plaintiffs point out that they were granted leave by Judge Nordberg to amend their complaint and claim that they originally filed their suit against the "ABC Company" an unknown defendant now identified as USG. Apparently, USG has been conducting its discovery on the same schedule as the other defendants and settled with two plaintiffs already. Plaintiffs further argue that Marilyn Lewis is a proper plaintiff because her allegations concerning involvement with the defendants are nearly identical to the allegations involving Josephine Cali,

Thomas Connolly, Jean Benson, Larry and Melissa Rebodos, Anthony and Linda Giacomino, Mary and Robert Jorgenson, Carole and Dennis Dufern, Craig and Lisa Keller and Carolyn and Phillip Giambone.

We acknowledge plaintiffs arguments with respect to Fed. R. Civ. Proc. 15(a). We conclude, however, that the appropriate rule to reference is Fed. R. Civ. Proc. 21. Plaintiffs' request that this court construe their memorandum as moving for an order under Rule 21 in the alternative is here by granted.

## MOTION FOR EXTENSION OF TIME TO FILE ANSWER

New York Life's motion for an extension of time to answer is granted to ten days after the date of this Memorandum Opinion and Order.

## CONCLUSION

For the reasons set forth above New York Life's motions to dismiss Count VII (#184-1) is denied. New York Life's motion to dismiss plaintiffs' second amended complaint (#168-1) is denied as to Counts VIII and XVI and granted as to Counts XIV and XXI. New York Life's motion for an extension of time in which to respond to plaintiffs' second amended complaint (#171-1) is granted to ten days after the date of this order. USG and Marilyn Lewis are hereby added as parties under Fed. R. Civ. Proc. 21 and New York Life's motions to strike and dismiss these two parties as well as Count XXIII (#172-1 & #172-2) are denied. The August trial date set

earlier this month remains firm.

SO ORDERED   5/31/00

ENTERED:

*Ronald A. Guzman*

HON. RONALD A. GUZMAN

**United States District Court Judge**

~~February _____, 2000.~~

Copies to:

Champ W. Davis, Jr.
Margaret F. Wolfe
Davis, Mannix & McGrath
125 5. Wacker Drive
Suite 1700 Chicago, Il. 60606

John Edward Burke
Burke, Weaver & Prell
55 West Monroe Street
Suite 800
Chicago Il. 60603

Donald Alan Murday
Peterson & Ross
200 East Randolph Drive
Suite 7300
Chicago, Il. 60601

Daniel S. Hafter
Hafter & Carroll
33 West Wacker Drive
Suite 1650
Chicago, IL. 60606