# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ronald A. Guzman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 96 C 7882 | **DATE** | 5/31/2000 |
| **CASE TITLE** | FRANK P.,et al vs. NEW YORK LIFE INSURANCE CO.,et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER: Lincoln/CMP's motion to dismiss [174-1] is granted in part and denied in part. Lincoln/CMP's motion to strike and dismiss Counts VI, IX, XIII, XVII and XIX and XX is denied. The motion to dismiss Count XV and XXII is granted. Lincoln/CMP's answer to plaintiffs' second amended complaint is due ten business days after the date of this opinion. The August trial date stands.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | Document Number |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | | |
| | Notified counsel by telephone. | JUN 0 1 2000 | 240 |
| ✓ | Docketing to mail notices. | date docketed | |
| | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | |
| TBK | courtroom deputy's initials | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials |

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

|  |  |  |
|---|---|---|
| FRANK P. AND JEAN M. SORANNO, et al., | ) ) ) ) | **DOCKETED** |
| Plaintiffs, | ) ) | **JUN 0 1 2000** |
|  | ) | No. 96 C 7882 |
| NEW YORK LIFE INSURANCE CO, et al., | ) ) ) | |
|  | ) ) | |
| Defendants. | ) ) | |

## MEMORANDUM OPINION AND ORDER

Pending are Defendants Lincoln National Life Insurance Company and CMP Financial Services, Inc.'s collectively ("Lincoln/CMP") motion to dismiss Counts VI, IX, XV, XVII and XXII of plaintiffs' second amended complaint pursuant to Fed. R. Civ. Proc. 12(b)(6). Also pending is Lincoln/CMP's motion to dismiss Count XX. For the reasons set forth below Lincoln/CMP's motion is granted as to Counts XV and XXII and denied as to Counts VI, IX, XVII and XX. Also pending is Lincoln/CMP's motion to strike and dismiss Counts XIII and XIX of plaintiffs' second amended complaint. This motion to strike and dismiss is denied based upon our finding that plaintiffs have sufficiently plead fraud in Count XX.

## BACKGROUND FACTS

The following facts are taken from plaintiffs' second amended complaint dated April 1, 1999. For purposes of review, we will accept plaintiffs' allegations as true. Plaintiffs are

individual investors, most of whom are Illinois residents. From 1987 to 1995, they gave money to defendant David Freitag to purchase insurance policies, annuities, and/or mutual fund investments. Plaintiffs allege that they suffered losses as a result of a fraudulent scheme conducted by Freitag and the insurance companies he represented.

During this 1987-1995 time period, Freitag worked as an agent for two different groups of insurance companies. From 1987 to December 1992, Freitag worked as an insurance and sales agent for New York Life Insurance Company and New York Life Insurance and Annuity Corporation. There was a supervisor in change of Freitag during his employment at New York Life. Freitag also had a secretary and other assistants at New York Life. Between at least 1987 and 1995 Freitag was also a sales agent for USG and sold life insurance policies and annuities on behalf of USG. Eventually, New York Life discovered irregularities in Freitag's customers' accounts and fired him in December 1992.

From December 1992 until sometime in 1994, Freitag worked as an insurance and sales agent for Lincoln National/CMP. When he moved to Lincoln/CMP Freitag persuaded a number of plaintiffs to transfer their accounts from New York Life to Lincoln/CMP, and by September 1993, these plaintiffs had transferred their accounts over to Lincoln/CMP. While at Lincoln/CMP, Freitag sold plaintiffs mutual funds in addition to life insurance policies and annuities. In addition to bringing over his New York Life clients, Freitag also obtained new clients while at Lincoln/CMP. There was a supervisor in change of Freitag while at Lincoln/CMP. Eventually, Lincoln/CMP discovered irregularities in Freitag's customers accounts and fired him. After leaving Lincoln/CMP, Freitag worked on his own as an insurance and sales agent and continued to find new clients.

2

Freitag's general culpability is not in dispute. He has been convicted of fraud, is incarcerated, has never appeared in this action, and subsequently defaulted. Instead, this lawsuit focuses on the potential liability of New York Life, Lincoln/CMP and USG. Generally, the second amended complaint alleges that Freitag worked as an insurance and sales agent for each company, that he received office space and secretarial support, and that he was supervised by someone at each company. The second amended complaint alleges that each insurance company "held itself out to the general public as a company that sold life insurance policies, annuities, and offered other investment opportunities through its registered agents, one of whom was Freitag.

The second amended complaint alleges three types of wrongdoing by Freitag. First, the complaint alleges that, in order to induce plaintiffs to invest in the insurance policies, annuities, and mutual fund investments, Freitag made false representations regarding the safety and expected performance of these investments. Second, the complaint alleges that Freitag tampered with plaintiffs' accounts by withdrawing money over forged signatures and by transferring money between different accounts without plaintiffs' permission or knowledge. Finally, the complaint alleges that Freitag concealed the true nature of plaintiffs' investments by sending plaintiffs false monthly statements that overstated the balances in their accounts, listed no surrender charges for the policies which was false and the total life insurance benefits listed were false. In some instances New York Life subsequently reversed the transactions but failed to inform plaintiffs of the improper transactions. New York Life also failed to check to see if the signatures involved with those transactions were genuine nor did it impose controls to check the genuineness of the signatures.

**Misrepresentations at the Time of Purchase**

The complaint alleges that Freitag made certain misrepresentations at the time plaintiffs gave him money to purchase the various financial products. Specifically, with regard to the annuities sold while at New York Life, Freitag falsely represented that the principal amounts of the annuities were "safe and secure," that plaintiffs would receive interest payments, and that the interest earned would be at least 19.5%. He also represented that the initial deposits of funds for the annuity would cover all costs of the annuity and no other funds would have to be deposited. With regard to the life insurance policies sold while at New York Life, Freitag falsely represented that plaintiffs would never have to pay premiums on their policies to keep them in effect, that the principal and interest earned would be sufficient for retirement, that the life insurance policies were primarily investment vehicles designed to earn non-taxable income on the principal amount, and there was a guarantee the policies would never lapse. As a result of Freitag's misconduct, many plaintiff's lost all their money because their policies lapsed when the premiums were not paid.

The complaint contains similar allegations regarding Freitag's work while at Lincoln/CMP. Starting in December 1992, Freitag allegedly persuaded plaintiffs to invest with Lincoln/CMP rather than New York Life. Freitag falsely represented to plaintiffs that Lincoln/CMP was offering a higher rate of return on their investments than New York Life, that they would not lose any of their principal, and that the interest earned on their policies would again pay the premiums Freitag also represented–as he had done while at New York Life–that the life insurance policies and annuities were investment opportunities to earn high non-taxable interest on the principal payments. Finally, while at Lincoln/CMP, Freitag allegedly induced

4

plaintiffs to purchase interests in a mutual fund by falsely representing that this investment was safe and would generate high returns on principal and by representing that plaintiffs would not lose their principal investment.

Sometime in October or November of 1994 Lincoln/CMP discovered the statements that Freitag had caused to be issued to the plaintiffs reflecting the account balances. Lincoln/CMP did not inform any of Freitag's customers of the problems with their statements or that Freitag had been fired. After he left Lincoln/CMP Freitag continued to solicit new customers, to invest in American Mutual Funds, but failed to disclose that he was fired from Lincoln/CMP. As a result of Freitag's apparent success many customers invested in both insurance policies and mutual funds with Freitag after he was fired.

The complaint does not allege that either New York Life or Lincoln/CMP were aware of the alleged misrepresentations made by Freitag nor does it allege that either of these defendants participated actively in the sale of the insurance policies, annuities, and mutual funds. It solely alleges that supervisors were assigned to Freitag at both New York Life and Lincoln/CMP.

**Unauthorized Withdrawals and Transfers**

The complaint alleges that money was withdrawn from plaintiffs' accounts by means of their forged signatures and that money was transferred between their accounts in order to pay the premiums on the plaintiffs' insurance policies. These allegations appear to relate solely to the time period Freitag was at New York Life and thus do not concern Lincoln/CMP.

The complaint alleges that money was transferred from one plaintiff's account to another plaintiff's account "in order to pay the premiums on the plaintiff's insurance policies." Although the second amended complaint is not specific with regard to who initiated this process, the

complaint states that New York Life executed these transactions. However, the complaint does not specifically state that New York Life was aware of the unauthorized nature of these transfers at the time they were made nor that New York Life made them in order to defraud plaintiffs.

The complaint alleges that New York Life eventually reversed the unauthorized transfers relating to plaintiff N. Lewis but never reversed the other transactions nor informed the other plaintiffs of the irregularities in their accounts. It appears that New York Life fired Freitag shortly after New York Life discovered the account irregularities.

The complaint also alleges that withdrawals and transfers of funds in plaintiffs' accounts "on the forged signatures of the account holders." New York Life executed the transfers but allegedly failed "to check to see if the signatures were genuine, nor did it impose any controls to check the genuineness of the signatures or notary of the signature."

### Sending False Monthly Account Statements

The complaint alleges that Freitag sent plaintiffs false statements concerning the status and performance of their investments. Beginning in 1991, Freitag began sending out monthly statements to the plaintiffs who had invested with him. Freitag did so "on behalf of New York Life and as an agent of New York Life." This monthly statements allegedly were false and misleading in that, among other things, they contained a false statement of the cash value of the particular insurance policy, a false statement of the interest credited for the policy and a false statement of the total life insurance benefits. The monthly statements were sent on New York Life letterhead and listed Freitag as "Agent" for New York Life. The complaint attaches samples of those letters as Exhibit A. Similar false statements were sent on Lincoln/CMP letterhead during the relevant period. The complaints attaches samples of those letters as Exhibit B.

6

The complaint alleges that both New York Life and Lincoln/CMP fired Freitag for irregularities in his customers' accounts but that the defendants never informed any of the plaintiffs of such irregularities.

The complaint also alleges the following facts concerning public knowledge of Freitag's allegedly fraudulent behavior. As already noted, on or about November 9, 1993, the NASD filed a formal complaint against Freitag alleging that in 1991 he arranged to have funds transferred from one annuity account at New York Life to other accounts to pay for life insurance premiums. On or about October 7, 1994, Freitag allegedly consented to a disciplinary order by the Illinois Department of Insurance. On October 5, 1995 Freitag filed for bankruptcy under Chapter 11. On or about March 1, 1996, Freitag was arrested and charged with 30 counts of fraud, theft by deception and financial exploitation of the elderly. Freitag was eventually convicted and is now serving in federal prison.

## DISCUSSION

In considering a Rule 12(b) (6) motion to dismiss, this court must accept as true all well pleaded factual allegations in the complaint and view them, along with all reasonable inferences to be drawn from them, in the light most favorable to the plaintiff. *Cornfield v. Consolidated High School District No. 230,* 991 F. 2d 1316, 1324 (7th Cir. 1993). A motion to dismiss may be granted only it "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief". *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957). A plaintiff may plead conclusions but those conclusions "must provide the defendant with at least minimal notice of this claim." *Jackson v. Marion County,* 66 F. 3d 151, 154 (7th Cir. 1995).

7

**COUNT VI**
**VIOLATIONS OF THE SECURITIES EXCHANGE ACT OF 1934**

In Count VI of their second amended complaint, plaintiffs allege that Lincoln/CMP violated Section 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), and that Freitag violated Section 10(b) of the Exchange Act. Lincoln/CMP argues pursuant to Section 10(b), 15 U.S.C. §78j(b) that no cause of action exists for *respondeat superior* or vicarious liability and that the products plaintiffs invested are not "securities" within the definition of the Exchange Act.

Judge Nordberg in his February 24,1999 opinion relying on *Harrison v. Dean Witter Reynolds, Inc.,* 79 F. 3d 609 (7th Cir. 1996) discussed the "control person liability theory" under Section 20(a) and pointed out that defendants did not object to this theory of liability . 1999 WL 104403 ✳ 8 (N.D. Ill.). Defendants only prior objection "[w]as that plaintiffs had not sufficiently plead the necessary elements to state the underlying primary violation against Freitag for violation of Section 10(b) of the 1934 Act." Specifically, defendants argued that plaintiffs have not plead fraud with particularity as required by Fed. R. Civ. Proc. 9(b). Judge Nordberg after reviewing plaintiffs' complaint concluded that plaintiffs had sufficiently set forth the basis elements of an underlying violation of § 10(b). 1999 WL 104403 ✳9 (N.D. Ill.).

Lincoln/CMP relies on *Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.,* 511 U.S. 164 (1994) to support its position that Lincoln National/CMP does not have primary liability under the Exchange Act under either a *respondeat superior* theory or a vicarious liability theory. *Central Bank of Denver v. First Interstate Bank of Denver,* 511 U.S. 164, 114 S. Ct. 1439, 128 L. Ed. 2d 119 (1994) held that a private plaintiff may not maintain an action for

8

aiding and abetting violations of Section 10(b) of the Securities Exchange Act. Congress

concerned that *Central Bank* might be extended to eliminate the SEC's power to enjoin aiding

and abetting violations, subsequently enacted legislation reinforcing the SEC's power to enjoin

aiding and abetting primary violations of several securities laws. That legislation, Section 104 of

the Private Securities Litigation Reform Act of 1995, Pub. L. 104-67, 109 Stat. 737 (1995),

prevents lower courts from extending the logic of *Central Bank* to SEC injunctive actions.

Lincoln/CMP's reliance on this case, however, is misplaced because plaintiffs are moving

under section 20(a) of the 1934 Act based on Freitag's alleged violation of § 10(b) of the 1934

Act. See 15 U.S.C. §78j(b) and §78t. Under these sections private parties have been found to

have standing. See, *Danis v. USN Communications, Inc.,* 73 F. Supp. 2d 923 (N.D. Ill. 1999), *In*

*re Healthcare Compare Corp, Securities Litigation,* 75 F. 3d 276, 280 (7th Cir. 1996), and

*Harrison v. Dean Witter Reynolds, Inc.,* 79 F. 3d 609 (7th Cir. 1996).

In *Dean Witter,* our Court of Appeals discussed the control person theory set forth in 15

U.S.C. §78t as well as the definition of control. *Supra,* at 614. The Court acknowledged that

liability is foreclosed if the controlling person acted in good faith and did not directly or

indirectly induce acts constituting a violation. In *Dean Witter's* case, however, the Court agreed

that the lack of supervision over the defendant, while his actions were providing income to *Dean*

*Witter* could be viewed by a jury as recklessness. *Id. at 615.* Thus, we deny Lincoln/CMP's

motion to dismiss Count VI insofar as it is based upon the argument that primary liability could

not be established under *respondeat superior* or a vicarious liability theory.

Lincoln/CMP's second argument is that the products it sells are not securities for purpose

of the Securities Exchange Act. To resolve this issue we need not analyze the alleged attributes

9

of the annuities sold by Lincoln/CMP. As plaintiffs point out the Securities & Exchange Commission in its order of September 23, 1998 concluded that Freitag conducted a Ponzi scheme when he offered investors the opportunity to pool funds for investments in mutual funds. The SEC then entered an order for permanent injunction against Freitag for violating Sections 5(a), 5(c), and 17(a) of the Securities Act of 1933 and Sections 10(b), 15(a) and 15(c) of the Exchange Act of 1934 and Rule 10b-5 thereunder. The SEC's findings offer support for plaintiffs' position and that the sale of securities are involved here and is sufficient to survive Lincoln/ CMP's motion to dismiss. The attributes of the products sold by Lincoln/CMP will be examined once all the facts are before the Court. Therefore, Lincoln/CMP's motion to dismiss Count VI is denied.

**COUNT IX**
**FAILURE TO SUPERVISE AND NEGLIGENT RETENTION**

Defendant Lincoln/CMP argues that Count IX of plaintiffs' second amended complaint should be dismissed. In Count IX plaintiffs allege a negligence claim under tort law for failure to supervise and the negligent retention of Freitag. In February of last year Judge Nordberg refused to dismiss Count IX, in part, after analyzing *Moorman Mfg. v. National Tank Co.,* 91 Ill 2d 69, 435 N.E.2d 443, 61 Ill. Dec. 746 (1982) and the numerous cases interpreting it. Judge Nordberg dismissed plaintiffs' alleged negligent supervision claims to the extent they related to Freitag's actions in "selling" the insurance contracts and annuities, but as to the other alleged negligent conduct, especially the forged withdrawals and transfers, Judge Nordberg concluded that these actions did not appear to be included within the terms of the parties' contracts and thus were not barred by *Moorman.*

10

Lincoln/CMP argues that plaintiffs' negligence claims explicitly arise under the terms of the parties contracts and that plaintiffs cannot seek to recover under a negligence theory for purely economic loss. This court disagrees. Plaintiffs' alleged tort claims for the negligent supervision and retention of Freitag involve fraudulent conduct and misrepresentations on Freitag's part. Torts involving either negligent or intentional misrepresentations are not barred by the doctrine. See *Tolano Pizza v. Davy McKee Corp.*, 187 Ill. App. 3d 365, 368, 543 N.E. 2d 225, 134 Ill. Dec. 942 (1st Dist. 1989). We decline to discuss the application of this doctrine a second time in light of Judge Nordberg's very thorough discussion set forth in his February 24, 1999 opinion. Lincoln/CMP's alleged negligence involves the lack of supervision while these numerous instances of fraud were taking place, the negligent hiring of Freitag when a formal NASD complaint had been lodged against him, and permitting him to sell securities during a period in which his license was suspended. Moreover, the facts alleged by plaintiffs in support of this tort relate to the fraudulent actions that took place when plaintiffs' investments were with Lincoln/CMP and could be concluded to arise outside the contract. Accordingly, Lincoln/CMP's motion to dismiss Count IX is denied.

## COUNT XV
## BREACH OF FIDUCIARY DUTY

Lincoln/CMP moves to dismiss Count XV of plaintiffs' second amended complaint which alleges that Lincoln/CMP breached their fiduciary duties under Illinois law to plaintiffs. Plaintiffs argue that a fiduciary duty is present based upon the specific facts alleged in their complaint. Plaintiffs claim they "placed their trust and confidence" in defendants, that

11

defendants gained "influence and superiority" over the plaintiffs, and other such general statements.

A fiduciary relationship may arise as a matter of law by virtue of the parties relationship, e.g. attorney-client, or it may arise as a result of the special circumstances of the parties' relationship where one places trust in another so that the latter gains superiority and influence over the former. *In re Estate of Rothenberg,* 176 Ill. App. 3d 176, 179, 125 Ill. Dec. 739, 741, 530 N.E. 2d 1148, 1150 (1988). Plaintiffs argue that they had a fiduciary relationship with Lincoln/CMP based upon their relationship with Freitag. The particular facts, as alleged by plaintiffs, do not support their general statements that such a relationship existed between them and Lincoln/CMP even when taken in a light most favorable to the plaintiffs. Plaintiffs have not only failed to allege facts to support a fiduciary relationship with Freitag but have also failed to set forth any facts which establish why a fiduciary relationship came into existence with Lincoln/CMP.

Plaintiffs reliance upon *Burdett v. Miller,* 957 F. 2d 1375, 1381 (7th Cir. 1992), a case that involved a plaintiff who put her trust in her accountant, who subsequently invested the plaintiff's money in numerous start up tax shelters is misplaced. This case involved a defendant who was representing his own firm and his own investments and when advising the plaintiff to invest in the first of three ventures did not tell her that it was the group's first venture, that the investment units would be unmarketable, and that the two units he was urging her to buy (at $10,000 a piece) represented a third of the total investment in the first project. The plaintiff not only bought the two units but at defendant's urging executed a promissory note for $20,000 to the tax shelter, secured by a letter of credit that she obtained from a bank. the plaintiff received

12

no prospectus or other written information about the projects. *Id at 1379.*

The court explained " [a] fiduciary duty is the duty of an agent to treat his principal with the utmost candor, rectitude, care, loyalty, and good faith - in fact to treat the principal as well as the agent would treat himself...... the common law imposes that duty when the disparity between the parties in knowledge or power relevant to the performance of an undertaking is so vast that it is a reasonable inference that had the parties in advance negotiated expressly over the issue they would have agreed that the agent owed the principal the high duty that we have described, because otherwise the principal would be placing himself at the agents' mercy. *Id. at 1381.*

*Burdett* went on to explain that the relationship between an investment advisor and the people he advises is not a third type of fiduciary relationship. *Id.* But that fiduciary duties are sometimes imposed on an ad hoc basis. *Id.* The court found that the defendant had brought himself within the orbit of fiduciary duty based upon the fact that [Miller] invited the plaintiff to accept his advice with no questions asked or answered, in reliance on his professional and professorial status, and on his insight into the arena of tax shelter investments–a technical area about which the plaintiff was ignorant. *Id.* at 1382. The court noted that Miller could have protected himself from being deemed a fiduciary by explaining the character and circumstances of the investment to Burdett, by disclosing her stake in them to her, be seeing to it that she received prospectuses and other documents describing the risks of the investment, and if need be by advising her to seek additional counsel before staking large sums on these risky ventures. He did none of these things. *Id at 1318.*

Here, the facts surrounding plaintiffs' relationship with Freitag and the insurance companies he represented are entirely different and plaintiffs fail to plead facts which would

13

support the possibility that a fiduciary relationship came into existence. Plaintiffs allege no

nexus between their particular characteristics which would establish that a position of dominance

was created or that their lack of employment experience, health, etc. made them susceptible to

Freitag's claims. Rather, they simply argue based upon the "notice pleading" requirements of

Fed. R. Civ. Proc. 8 that they have satisfied their pleading requirements. This reasoning alone is

insufficient to survive Lincoln/CMP's motion to dismiss. Plaintiffs have simply set forth facts

which support the ordinary good faith and fair dealing relationship which traditionally arises in

any contract situation. To be sure, Freitag's use of fraudulent statements which inflated the value

of the accounts and the pirating of the assets of the accounts was not in good faith, but his alleged

relationship with his clients does not set forth sufficient facts to support a breach of fiduciary

relationship by Lincoln/CMP. Accordingly, Lincoln/CMP's motion to dismiss is granted and

Count XV is dismissed with prejudice.

## COUNT XVII
## BREACH OF CONTRACT

Count XVII of plaintiffs' second amended complaint set forth a claim for breach of

contract against Lincoln/CMP. Lincoln/CMP argues that plaintiffs' breach of contract claims are

deficient based upon plaintiffs' failure to allege all the contractual condition precedents required

of them. They also point out that plaintiffs' breach of contract claim appears to be premised on

the value of their accounts based on Freitag's fraudulent statements. We agree with

Lincoln/CMP as to the confusing text of this count but for purposes of this motion to dismiss

Count XVII sufficiently sets forth a number of facts to support a breach of contract situation.

While the terms of the contracts and the conditions precedents necessary to the formation of

14

contracts were certainly set forth in the policies issued by the defendants-- the apparent authority

bestowed in Frietag by defendants, and what contracts came into existence as a result of this

authority is an issue which must be resolved at a later stage of the litigation. Therefore,

Lincoln /CMP's motion to dismiss Count XVII is denied.


## COUNT XX
## FRAUD

Count XX of plaintiffs' second amended complaint seeks relief for common law fraud

under Illinois law against Lincoln/CMP. Plaintiffs make two general types of fraud allegations.

First, plaintiffs allege that Lincoln/CMP, through its agent, Freitag, made false and misleading

statements of material fact" to plaintiffs and that Lincoln/CMP "failed to inform plaintiffs of the

conduct of Freitag..." as set forth in paragraphs 78-82 . Lincoln/CMP argues that plaintiffs have

failed to allege the circumstances constituting plaintiffs' fraud with the required particularity set

forth in Federal R. Civ. Proc. 9(b). They further contend that plaintiffs have failed to allege the

"who, what, when, where, and how" of the alleged misrepresentations. We disagree.

Plaintiffs' second amended complaint details the statements made by the defendants, the

time frame in which they were made, plaintiffs' reliance on these statements, and the resulting

injury. The dates as to alleged fraudulent conduct when Freitag made the misleading statements

to each of the plaintiffs are set forth in the general fact section of the complaint and how these

misrepresentations were made. In particular, the court is told when the mutual funds were

purchased, the amount of the purchase , when the fraudulent statement were mailed, where the

statements were mailed from, and the content of the misrepresentations. Thus, the particulars of

the fraud have been alleged.

As to Lincoln/CMP's argument that Freitag's "rate of return statements" are nonactionable opinions as to future events, this argument fails as a matter of law. Lincoln/CMP argues that such misrepresentations constitute nothing more than Frietag's opinions as to the course of future events, but Lincoln/CMP obviously ignores the case law set forth in *Ackerman v. Northwestern Mutual Life Ins. Co.,* 172 F. 3d 467 (7th Cir., 1999) which discusses the requirements of Rule 9(b) as they are applied to insurance companies in general versus the officers of such companies. The court stated the following:

> This problem is least severe with respect to the insurance company. When an agent who is authorized to make a contract on his principal's behalf (and the principal needn't be the agent's employer and was not here) uses fraud to induce the contract, the principal is liable even if the agent is acting solely to feather his own nest.

*Ackerman* at 470.

In *Ackerman* the court found that the plaintiffs had not sufficiently alleged the elements of fraud under Fed. R. Civ. Proc. 9 as to the offices of the company . However, there was no dispute that the agent of Northwestern Mutual Life engaged in fraud to feather his own nest. *Id.*

Lincoln/CMP's second argument is that plaintiffs' fraud claim based upon Lincoln/CMP's alleged "failure to disclose" cannot stand under Illinois law because plaintiffs cannot establish that Lincoln/CMP's had a duty under such a theory. Lincoln/CMP relies on *Northern Trust Company v. VIII South Michigan* 276 Ill. App 3d 355,363,657 N.E 2d 1095, 1102, 212 Ill. Dec. 750 (1st Dist. 1995) which held that absent a duty to do so, a failure to disclose information has " no significance" to a fraud claim, and *Lidecker v. Kendall College* 194 Ill. App. 3d 309,314,550 N.E.2d 1121, 1124 (1st Dist. 1990) holding that [p]laintiff must also

establish that defendant has a duty to inform the plaintiff of any allegedly omitted material facts.

Under Illinois law, a plaintiff claiming that the defendant failed to make a representation when it should have must "plead and prove a duty on behalf of the [defendant] to make an affirmative statement." *Coca Cola Co Foods Division v. Olmarc Packing Co.,* 620 F. Supp. 966, 973 (N.D. Ill. 1985) citing *Cummings v. Dusenbury,* 129 Ill. App. 3d 338, 84 Ill. Dec. 615, 472 N.E. 2d 5757, 581 (2nd Dist. 1984) (other citations omitted). Generally such a duty arises in two circumstances "1)when the defendant's acts contribute to the plaintiffs's misapprehension of a material fact and the defendant intentionally fails to correct a misapprehension of material fact or 2) when the defendant owes some fiduciary duty to the plaintiff to make full and fair disclosure and fails to correct a misapprehension of a material fact. *Coca Cola,* 620 F. Supp. at 973, citing *Obermaier v. Obermaier,* 128 Ill. App. 3d 602, 83 Ill. Dec. 627, 470 N.E. 2d 1047, 1051 (Ill. App. 1994).

Because we have decided that plaintiffs have failed to sufficiently plead facts to support the existence of a fiduciary duty on the part of Lincoln/CMP, plaintiffs must show that Lincoln/CMP meets the requirements of the first relationship outlined above. In order to show such a relationship, plaintiffs must have alleged that the acts of Lincoln/CMP contributed to plaintiffs' misapprehension, of a material fact, which Lincoln/CMP intentionally failed to correct. *See Coca Cola,* 620 F. Supp. at 972. Taking all of the allegations in the second amended complaint as true and drawing all reasonable inferences in favor of plaintiffs, plaintiffs have sufficiently alleged facts to satisfy the above elements, and we must deny the motion to dismiss.

Freitag was Lincoln/CMP's agent. Freitag then sent out false account statements, which materially misrepresented the status of plaintiffs' accounts. Once Lincoln/CMP became aware of

this conduct they fired Freitag but never informed plaintiffs of Freitag's conduct. Plaintiffs have alleged that even after Freitag was disciplined by the Illinois Department of Insurance and NASD, and lost his license to sell securities he apparently continued to do so at Lincoln/CMP. These facts bring into question the involvement of Lincoln/CMP once Freitag was disciplined and once Lincoln/CMP discovered irregularities in its customers accounts. Whether these acts contributed to plaintiffs' misapprehension of a material fact as to Freitag's character and ability to handle their investments must be decided after the facts are developed. These allegations, however, set forth the elements necessary to establish a duty to disclose, and plaintiffs have sufficiently alleged a claim for fraud by omission. Because plaintiffs' fraud count survives the motion to dismiss Lincoln/CMP's motion to strike and dismiss Counts XIII and XIX is denied.

## COUNT XXII
## RICO CONSPIRACY

Count XXII of plaintiffs' second amended complaint alleges a RICO conspiracy under § 1962(d). At the outset, we agree with defendants that plaintiffs have inappropriately attempted to replead their original RICO counts (Counts I and II) in this count XXII which were dismissed. The same facts supporting Counts I and II are being alleged in support of Counts XXI and XXII but plaintiffs now claim that the section of RICO allegedly violated was 12 U.S.C. § 1962(d).

To state a claim for conspiracy under § 1962(d), a plaintiff must allege "(1) that each defendant agreed to maintain an interest or control of an enterprise or to participate in the affairs of an enterprise through a pattern of racketeering activity, and (2) that each defendant further agreed that someone would commit at least two predicate acts accomplish those goals." *Goren v. New Vision, Int'l, Inc.*,156 F. 3d 721, 732 (7th Cir. 1988). The complaint need not allege that

each defendant agreed personally to commit two predicate acts to but rather need only allege that each defendant agreed to "participate in an endeavor which, if complete, would constitute a violation of RICO." *Id.* at 731-32. In *Goren v. New Vision International, Inc.,* the Seventh Circuit affirmed the dismissal of the plaintiff's complaint because it failed to allege any "facts indicating an agreement by the [defendants] as to which roles they would play in the enterprise" or any agreement by the defendants that someone would commit two specific predicate acts on behalf of the enterprise. *Id.* at 732.

Similarly, in this case before us, plaintiffs' complaint fails to allege with specificity any agreement among the defendants to participate in an endeavor that would constitute a violation of RICO. Paragraphs 211-217 alleges that Lincoln/CMP entered into a conspiracy with Freitag because they agreed to hire him because of the large amount of business he could bring to Lincoln/CMP, because Freitag then mailed misleading and fraudulent statements to plaintiffs through the U.S. mail, Lincoln/CMP allowed Freitag access and encouraged him to use marketing tools to sell securities, and sent a questionnaire through the United States mail to confirm that Freitag did sell policies. All of these actions plaintiffs claim constitute a pattern of racketeering and the enterprise to accomplish such was the Lincoln/CMP and Freitag enterprise. However, nothing in these paragraphs nor any other portion of the complaint sets forth any facts indicating an act of agreement among the alleged conspirators or what roles the various defendants played in the conspiracy. The complaint fails to allege when the agreement to conspire was entered into and there is no allegation that Lincoln/CMP agreed to receive income from the alleged racketeering activity. The second amended complaint also lacks any specific allegation that Lincoln/CMP agreed to the commission by Freitag of two specific acts in

19

furtherance of the alleged conspiracy. Plaintiffs' complaint in general attributes all of Freitag's fraudulent conduct to Lincoln/CMP ostensibly under an agency theory. But the complaint contains no allegations that Lincoln/CMP knew or agreed to Freitag's fraudulent conduct. Absent such particular pleadings, plaintiffs' second amended complaint contains nothing more than "conclusory, vague, and general allegations of conspiracy" that are insufficient to state a claim under § 1962(d) *Goren*, 156 F. 3d at 733. We, therefore, dismiss Count XXII of plaintiffs' amended complaint with prejudice.

## CONCLUSION

Lincoln/CMP's motion to dismiss (#174-1) is granted in part and denied in part. Lincoln/CMP's motion to strike and dismiss Counts VI, IX, XIII, XVII and XIX and XX is denied. The motion to dismiss Counts XV and XXII is granted. Lincoln/CMP's answer to plaintiffs' second amended complaint is due ten business days after the date of this opinion. The August trial date stands.

**SO ORDERED** 5/31/00

ENTERED:

**HON. RONALD A. GUZMAN**
**United States Judge**

Copies to:

Champ W. Davis, Jr.
Margaret F. Wolfe
Davis, Mannix & McGrath

John Edward burke
Burke, Weaver & Prell
55 West Monroe Street

125 S. Wacker Drive
Suite 1700
Chicago, Il. 60606

Suite 800
Chicago Il. 60603

Donald Alan Murday
Peterson & Ross
200 East Randolph Drive
Suite 7300
Chicago, Il. 60601

Daniel S. Hafter
Hafter & Carroll
33 West Wacker Drive
Suite 1650
Chicago, IL. 60606