Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ronald A. Guzman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 96 C 7882 | **DATE** | 9/19/2000 |
| **CASE TITLE** | FRANK P., et al vs. NEW YORK LIFE INSURANCE CO., et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER: New York Life's motions for summary judgment are denied [208-1 and 213-1].

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | Document Number |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | | |
| | Notified counsel by telephone. | SEP 20 2000 date docketed | |
| ✓ | Docketing to mail notices. | | 253 |
| | Mail AO 450 form. | FILED FOR DOCKETING 00 SEP 19 PM 4:49 | docketing deputy initials |
| | Copy to judge/magistrate judge. | | |
| TBK | courtroom deputy's initials | Date/time received in central Clerk's Office | date mailed notice / mailing deputy initials |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| FRANK P. AND JEAN M. SORRANO, et al., | ) ) ) | **DOCKETED** |
| Plaintiffs, | ) ) ) | SEP 2 0 2000 |
| v. | ) ) ) | No. 96 C 7882 |
| NEW YORK LIFE INSURANCE COMPANY, et al., | ) ) ) ) | Judge Guzman |
| Defendants. | ) ) | |

## MEMORANDUM ORDER AND OPINION

Pending are Defendants New York Life Insurance Company and New York Life Insurance and Annuity Corporation's Motions for Summary Judgment against Plaintiffs Carmella and Samuel Ciraulo and Dominick Giacomino pursuant to Fed. R. Civ. P. 56. Also pending is New York Life's motion to strike plaintiffs' 56.1 responses. For the reasons set forth below, New York Life's motions for summary judgment are hereby denied (#208). New York Life's motion to strike plaintiffs' responses to New York Life's 56.1 statement is granted in part and denied in part (#213-1).

## BACKGROUND FACTS

Defendants New York Life Insurance Company and New York Life Insurance and Annuity Corporation ("New York Life"), have filed the present summary judgment motions

1

against Plaintiffs Carmella and Samuel Ciraulo[1] ("Ciraulo"), and the estate of Dominick Giacomino ("Giacomino"). These plaintiffs are among many who have filed a suit against New York Life in connection with dealings they had with David Freitag ("Freitag"). From 1987 to December 1992, Freitag worked as an insurance and sales agent for New York Life. During that period of time, plaintiffs purchased New York Life annuities through Freitag. New York Life fired Freitag in December 1992 upon discovery of irregularities in his customers' accounts. On or about March 1, 1996, Freitag was arrested and charged with thirty counts of fraud, theft by deception and financial exploitation of the elderly. Freitag was convicted and is now serving his sentence in federal prison.

On July 21, 1992, Carmella Ciraulo signed an application for and wrote check number 3268 payable to New York Life in the amount of $10,000 to purchase annuity N3 200 161. On September 30, 1992, annuity N3 200 161 was delivered to Carmella Ciraulo as reflected by a signed policy receipt. On October 20, 1992, Carmella Ciraulo signed an application to purchase a second deferred annuity from New York Life for $10,000. On November 9, 1992, annuity no. N3 201 955 was delivered to Ciraulo. Ciraulo paid New York Life a total of $20,000 for the two annuities.

On July 28, 1992 New York Life informed Ciraulo in writing that her first annuity would earn interest at a rate of 5.50%. On October 28, 1992 New York Life informed Ciraulo in writing that her second annuity would earn interest at an annual rate of 5.00%. Ciraulo subsequently received a statement from New York Life that states, in part, that the cash value of

---

[1] Carmella's husband Sam did not purchase an annuity, he was a contingent beneficiary on one of the annuities and his claims are derivative of his wife's.

2

annuity N3 201 161 on July 21, 1993 was $10,549.99. This statement set forth the following: "THE CURRENT CASH VALUE OF YOUR ORIGINAL DEPOSIT, $10,549.99, IS GUARANTEED TO EARN AN EFFECTIVE ANNUAL YIELD OF 4.25 PERCENT THROUGH JULY 20, 1994." In August 1993, Ciraulo contacted New York Life's Minnesota Customer Service Center to surrender her annuities. In response to Ciraulo's request, Anthony Tabone, a Senior Individual Annuity Consultant for New York Life, sent Ciraulo a letter informing her that the two annuities had a combined value of $20,989.10. The letter warned Ciraulo of the consequences of surrendering her annuities. It also reiterated that she would incur a surrender charge of $1,239.12. On September 1, 1993, New York Life issued checks in the amount of $10,025.63 and $9,767.36. The stubs attached to these checks stated that they were in "FULL SETTLEMENT OF ALL CLAIMS." New York Life also sent Ciraulo a transaction confirmation notice for each surrender. The Ciraulo's, who are now advanced in age and in failing health, are unable to testify about what representations were made. Furthermore, Linda Giacomino, their daughter claims to have been present each time Carmella Ciraulo met with Freitag, but she does not recall any representations made by Freitag regarding either annuity.

On September 28, 1992, Dominic Giacomino purchased an annuity from New York Life through Freitag for $70,000. Soon after Giacomino purchased this annuity he received a letter from New York Life's home office informing him that the interest rate on this annuity was 5% for the last year. Giacomino never contacted New York Life directly to question the interest rate on this annuity. Shortly after purchasing the annuity, Giacomino, through his son Paul, requested and began receiving monthly checks from New York Life in the amount of $889.58. During the period of November 6, 1992 through April 6, 1993 Giacomino received six checks for

3

a total of $5,337.48. Giacomino surrendered the annuity in April of 1993 because Freitag was now at Lincoln National. To complete the surrender, Giacomino signed a request for full surrender in which he asked New York Life to "please rush" his surrender. On April 13, 1993, New York Life sent him a check for $61,884.98 as well as a confirmation letter for the transaction. This notice explained how the surrender value was calculated and listed the cash value, surrender charges, and the surrender value of the annuity. Giacomino received this notice and the surrender value check According to New York Life, the surrender resulted in a "loss" for Giacomino of $2,777.54. This check was endorsed by Giacomino "for deposit Lincoln Nat. Insurance."

In April 1993, Robert Skripko, Director of audits for New York Life, wrote to Giacomino to confirm the transactions on his annuity. Skripko's letter included a spreadsheet listing the transactions on his annuity and a copy of all checks, including the full surrender check, sent to Giacomino. Giacomino never contacted New York Life directly to question the surrender value of his annuity or any of the information in Mr. Skripko's letter. Dominick Giacomino died on December 16, 1996. His son Paul Giacomino represents his estate in this matter. The estate of Giacomino is suing New York Life in two counts fraud, and failure to supervise and negligent retention. Paul Giacomino does not recall the rate of interest Freitag represented New York Life would pay on the annuity.

Plaintiffs both allege that, in order to induce them to purchase the annuities, Freitag falsely represented that the interest rate earned on the annuities would be in excess of 8% and that they could collect earned interest in monthly installments without any surrender charges being incurred. Plaintiffs further allege that Freitag sent them false statements concerning the

status and performance of their annuities. Plaintiffs claim that, New York Life fired Freitag on November 16, 1992, upon discovery of irregularities in his customers' accounts, but that New York Life did not inform the plaintiffs of the irregularities. Freitag's general culpability is not in dispute. He has been convicted of fraud and is now serving time in federal prison. The arguments advanced in support of summary judgment against the Ciraulos and Giacomino are duplicative with respect to the fraud and the breach of contract counts. Consequently, these motions are addressed as consolidated.

## MOTIONS TO STRIKE

Prior to reaching the merits of the motion for summary judgment, it is first necessary to address defendant's motion to strike. Local Rule 56.1(a) requires a party moving for summary judgment to file a statement of material facts as to which the moving party contends there is no genuine issue. All properly supported material facts set forth in such a statement are deemed admitted unless properly controverted by the opposing party. See *Id., Corder v. Lucent Techs, Inc.*, 162 F. 3d 924, 927 (7th Cir. 1988). Mere denials of a properly supported factual statement are not sufficient to show that a genuine issue of material fact exists. See *Shermer v. Illinois Dep't of Transportation*, 171 F. 3d 475, 477 (7th Cir. 1999)(citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed.2d 265 (1986)). Rather, a party must "come forward with appropriate evidence demonstrating that there is a pending dispute of material fact." *Waldridge v. American Hoechst Corp.*, 24 F. 3d 918, 921 (7th Cir. 1998). To meet this burden, a party contesting a motion for summary judgment must counter the affidavits and documents submitted with material of "evidentiary quality" (e.g. depositions or affidavits) that create a genuine factual issue. *Adler v. Glickman*, 87 F. 3d 956, 959 (7th Cir. 1996). While the evidence offered need not

5

be in a form that would be admissible at trial, see *Liu v. T & H Mach., Inc.*, 191 F. 3d 790, 796 (7th Cir. 1999), the evidence must identify a specific genuine issue for trial. See *Shermer*, 171 F. 3d at 477.

In their response, the Ciraulos disagree with twenty-eight paragraphs of the 56.1 Statement. (¶¶ 11, 19, 31, 35, 40, 41, 45-50, 58, 62-65, 72, 76-83, 96, 98). Five of the denials provide specific references to supporting materials. (¶¶ 49, 50, 81, 82, 83). Four of these five denials cite their own denials of requests for admissions. (¶¶ 50, 81, 82, 83). Giacomino's response disputes twenty-four of New York Life's statements of uncontested fact without record citations. New York Life's motion to strike is granted except as to plaintiffs' statements ## 83, 9 28, 31, 32 and 33. Ciraulo is entitled to dispute whether New York Life is holding any funds that she may be entitled to. Furthermore, Giacomino's denial with respect to whether the policy is a true and accurate copy of the terms of the annuity contract obviously goes to the issue of apparent authority and whether the terms Freitag conveyed became terms of the contract.

## DISCUSSION

Summary judgment is proper if the pleadings, answers to interrogatories, admissions, affidavits and other materials show "that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue of material fact exists where evidence is such that a reasonable jury could return a verdict for the non-movant. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-324 (1986). All of the evidence submitted must be viewed in a light most favorable to the non-movant and all reasonable inferences are drawn in their favor. See, e.g. *U.S. v. Diebold*, 369 U.S. 654, 655 (1962). New York Life moves for summary

6

judgment arguing that plaintiffs cannot establish the essential elements of their fraud, breach of contract, breach of fiduciary duty, negligent supervision and retention and conversion claims.

## COUNT VII
## FRAUD

In Count VII, plaintiffs assert a claim of common law fraud under Illinois law against New York Life. Plaintiffs make two general types of fraud allegations. The first is based upon the allegations that Freitag made misrepresentations to the plaintiffs at the time they purchased the annuities. The second aspect of the claim involves fraud by omission, focusing on New York Life's purported duty and failure to disclose Freitag's fraudulent actions, once discovered by New York Life, to the plaintiffs.

At the outset New York Life's memorandum fails to distinguish the elements between the two different types of fraud alleged in Count VII arguing in general terms only that New York Life's summary judgment must be granted because plaintiffs lack clear and convincing evidence of any misrepresentation or justifiable reliance. This fact alone warrants denial of New York Life's motion for summary judgment as to Count VII. Furthermore, the affidavit signed by Freitag that states that he represented to the Ciraulos and to Giacomino that they would earn interest in excess of 8% on their annuities supports the plaintiffs' allegations of misrepresentation at the time the annuities were sold. The affidavit and the false monthly statements sent by freitag are sufficient to raise questions of fact as to plaintiffs' reliance. (See Ciraulo's answer to request to admit that listed the full surrender value of her policies at $10,900.27 and $10,662.85 in September, 1993, which amounts conflict with that claimed by New York Life in requests to admit 12 and 15, I,E., $10,598.22 and $10,427.27) Defendants' argument that Freitag's

7

affidavit is "discredited testimony" in light of a subsequent written declaration that he submitted is unpersuasive. Freitag simply states in the latter document that this statement appears correct but that he could not be sure of the rate he had quoted to the plaintiffs without looking at his records. In light of Dominick Giacomino's death it is not surprising that the evidence produced by Giacomino is not as clear as that of Ciraulos but Frietag's affidavit as well as the circumstantial evidence surrounding Freitag's conduct as New York Life's agent is sufficient as a matter of law to warrant denial of summary judgment even as to Giacomino.

New York Life further argues that neither plaintiff can establish the requisite element of justifiable reliance. New York Life, relying on *Carr v. Cigna Securities, Inc.*, 95 F.3d 544 (7th Cir. 1996), argues that plaintiffs cannot show reasonable reliance on the alleged misrepresentations because they should have been put on notice to investigate their accounts. New York Life maintains that "soon after" the annuities were purchased both plaintiffs were sent and received letters from the home office disclosing the actual interest rates the annuities were earning as well as subsequent documents that contained the rates. New York Life relies on *Frahm v. Equitable Life Assurance Society of the United States*, 137 F. 3d 955 (7th Cir. 1998). *Frahm* was an ERISA case where the court held that a corporate fiduciary does not breach its fiduciary duty every time a lower level employee provides incorrect advice about a plan; there is no guarantee of accurate information, no 'duty perversion," and no "standard of absolute liability." A fiduciary satisfies its duty of care under § 1104(a)(1)(b) "by taking appropriate precautions such as training the benefits staff and providing accurate written explanations-even if the precautions sometimes prove to be insufficient." *Id.* at 960. *Frahm* leaves open the question of what may be an inappropriate or insufficient precaution that could from a basis of liability.

8

Furthermore, *Frahm* is distinguishable from the case at bar. *Frahm* involved a group of retirees who filed a complaint under ERISA seeking to have Equitable stripped of its reserved power to amend its health care plan. *Id.* It does not involve the fraudulent scheme allegedly involved in this case. As stated previously in *Ackerman v. Northwestern Mutual Life Ins. Co.*, 172 F.3d 467 (7th Cir. 1999): "when an agent who is authorized to make a contract on his principal's behalf uses fraud to induce the contract, the principal is liable even if the agent is acting solely to feather his own nest. *Id.* at 470. Moreover, New York Life's reliance on *Wolin v. Smith Barney, Inc.*, 83 F. 3d 847 (7th Cir. 1996) supports plaintiffs' position because it cannot be concluded as a matter of undisputed fact that New York Life's written statement revealed that a fraud had been committed. A person may justifiably rely upon the representation of another where the parties do not have equal knowledge, or means of knowledge, of the facts represented, or where there are peculiar circumstances inducing the person to rely solely upon the representation; the right to rely depends upon all of the surrounding circumstances. *Broberg v. Mann*, 66 Ill. App. 2d 134, 213 N.E. 2d 89 (2nd Dist. 1965). Furthermore, the undisputed facts as to Giacomino show that Giacomino continued to rely on Freitag's advice when he moved his annuity funds from New York Life to Lincoln National. We conclude that a question remains as to whether plaintiffs had a right to rely upon the representation of the inflated value without making further inquiry. Certainly New York Life had superior knowledge as to the value of plaintiffs' annuities as well as the fraudulent scheme Freitag was involved in. The plaintiffs were never expressly told of the nature of Freitag's actions. Moreover, the trier of fact could find that the solicitation of plaintiffs was of such tone and language as to inspire confidence and induce plaintiffs to rely on the representations therein. This is especially true because the letters defendants rely upon direct

the policy owner to CONTACT YOUR AGENT FOR THE LATEST GUARANTEED RATE (Ex. 8). To be sure, Giacomino received New York Life's surrender statement as well as their subsequent letter confirming the transactions on his annuity, but these undisputed facts do not conclusively establish whether New York Life's failure to disclose the nature of the conduct Freitag engaged constituted fraudulent concealment or omission of a material fact. Concealment is actionable where employed as a device to mislead. In order to be material, the concealed fact much be such that had the other party been aware of it, he would have acted differently. *Rice v. Snarlin, Inc.*, 131 Ill. App. 2d 434, 266 N.E. 2d 183 (1stDist. 1970). Under these circumstances we find that the record would enable a reasonable juror to conclude that fraud took place. For the reasons discussed, it can not be concluded that New York Life has established the absence of the elements of reliance or causation necessary to plaintiffs' fraud claim.

## COUNT VIII

## FAILURE TO SUPERVISE, NEGLIGENT RETENTION

In Count VIII the plaintiffs assert a claim against New York Life for negligent supervision and retention stemming from the alleged negligent conduct of Freitag following the purchase of the annuities. As to Giacomino New York Life contends that the record does not show, that Freitag, as an agent misappropriated any of Giacomino's money or undertook any unauthorized transactions. The estate solely claims that Freitag misrepresented the interest rate. The same argument is put forth as to Ciraulo. With respect to Ciraulo it is undisputed that evidence supporting the claim of alleged false statements is present. To be sure, while it is

10

undisputed that Freitag kept his conduct secret the issue remains as to what precautions internally New York Like should have been taking to ensure that its agents were not engaged in unethical selling strategies and/or manipulation of customers' accounts. While it is true that the potential for such manipulation is certainly less as to an annuity account rather than a mutual fund account, the circumstantial evidence as well as the false statements raise disputed material facts as to New York Life's negligent supervision. If established, the damages to plaintiffs like Ciraulo and Giacomino could be less than the damages incurred by others, but only a trial will tell. Thus, the issue of New York Life's duty, wholly apart from the contractual duties, to supervise Freitag remains. The fact that Giacomino's estate has not produced similar evidence is not fatal to Giacomino's claim. Once again the record certainly contains circumstantial facts from which it could be inferred that New York Life knew, or was culpably ignorant of the scheme Freitag engaged in. As a result, summary judgment as to Count VIII is denied.

## COUNT XII

## CONSUMER FRAUD ACT

In Count XII plaintiffs assert a claim under the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq*. New York Life maintains that they are entitled to summary judgment on this claim because the plaintiffs have not submitted evidence of a misrepresentation and because the claim is barred by the three-year statute of limitations. 815 ILCS 505/10a(e). New York Life points to the fact that plaintiffs filed their complaint on March 29, 1996, and that they surrendered their annuities more than three years prior to that date. Defendants once again state that the plaintiffs were given multiple written notices of the applicable interest rates and sent notices stating the annuities were subject to surrender charges.

11

Further, New York Life points out that the plaintiffs were sent checks payable in the amounts New York Life said that they were owed and argue that the plaintiffs mischaracterize the documents they received from New York Life.

Once again, the undisputed facts reveal that at least Giacomino continued to rely on Freitag's advice as to the annuities and in fact transferred his annuity proceeds from New York Life to Lincoln National upon such reliance. It is entirely possible that he would not have done so had New York Life expressly informed him of the full extent and nature of freitag's fraudulent manipulations. Under these circumstances, we find the record raises an issue of fact as to when plaintiffs' claims accrued for purposes of the statute of limitations. This conclusion is also supported by the undisputed fact that Freitag admits he actively concealed the fraud from plaintiffs. Hence, summary judgment is denied on New York Life's summary judgment motion.

## COUNT XIV

## BREACH OF FIDUCIARY DUTY

Count XIV is a claim of breach of fiduciary duty by New York Life. The arguments concerning this claim are moot based on this court's Memorandum Opinion and Order dated May 31, 2000, wherein this claim was dismissed with prejudice. 2000 WL 748142 (N.D. Ill. 2000).

## COUNT XVI

## BREACH OF CONTRACT

Count XVI sets forth a claim of breach of contract. New York Life argues that summary judgment is appropriate because Ciraulo has no evidence that New York Life breached any contract with her. The plaintiffs allege that they were quoted an interest rate of 8% and New

York Life did not credit the plaintiffs this amount. Further, the plaintiffs allege that Freitag represented that they that would not be assessed surrender charges and plaintiffs were assessed surrender charges. These allegations raise a triable issue of material fact as to the exact terms of the contract. Therefore, summary judgment as to this Count is denied.

## COUNT XVIII

## CONVERSION

Count XVIII is a claim of conversion. Plaintiffs have alleged that New York Life converted plaintiffs' funds when they failed to transfer Lincoln the values alleged to have been shown on the statements issued by Freitag. Under Illinois law, the basic elements of a conversion claim are the defendant's unauthorized and wrongful control of property that rightfully belongs to the plaintiff. *Stathis v. Geldermann, Inc.*, 295 Ill. App. 3d 855, 692 N. E. 2d 798, 806, (1st Dist.), *appeal denied*, 179 Ill. 2d 620, 705 N.E.2d 450 (1998). Essential to resolution of this count is a determination as to whether or not New York Life can be held liable to the "full value" as set forth in Freitag's statements. Consequently, summary judgment as to Count XVIII is denied without prejudice.

## **CONCLUSION**

For the foregoing reasons New York Life's motions for summary judgment are denied (## 208-1 and 213-1).

**SO ORDERED**     ENTERED: 9/19/00

RONALD A. GUZMAN
**United States Judge**