# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ronald A. Guzman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 96 C 7882 | **DATE** | 3/19/2001 |
| **CASE TITLE** | FRANK P., et al vs. NEW YORK LIFE INS CO., et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER: Defendant New York Life Insurance Company's motion for summary judgment on the ground that the covered Plaintiffs' claims are barred is Denied [65-1]. Trial is hereby set forth for 7/30/01 at 9:30a.m.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | MAR 20 2001 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| TBK | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| FRANK P. AND JEAN M. SORANNO, et al., | ) ) ) ) ) | **DOCKETED** MAR 2 0 2001 |
| Plaintiffs, | ) ) | No. 96 C 7882 |
| NEW YORK LIFE INSURANCE COMPANY, et al., | ) ) ) ) | Judge Ronald A. Guzman |
| Defendants. | ) ) ) | |

## MEMORANDUM OPINION AND ORDER

Pending is Defendant New York Life Insurance Company's motion for summary judgment pursuant to Fed.R.Civ.Proc.56. For the reasons set forth below this motion is denied. (#65).

## BACKGROUND FACTS

The facts of this case have been discussed extensively in numerous court opinions. Therefore, a very brief recitation of the facts follows: From 1987 until December of 1992, David Frietag ("Frietag") was employed as a New York Life ("NYL") insurance agent. When he parted ways with NYL, it was because he had been fired due to irregularities in his accounts. The plaintiffs in this case contend that during the time Frietag worked for NYL, he handled their accounts in an unlawful manner, causing them injuries. Specifically, plaintiffs allege that Frietag fraudulently lead them to believe that they were earning large interest and dividend payments by sending them false account statements. These statements, according to NYL, were based upon

1

accounts that do not exist. Plaintiffs also allege that large sums of money were transferred out of their accounts into either Frietag's account or into another one of the plaintiff's accounts without authorization and based upon forged signatures.

## DISCUSSION

Under Fed.R.Civ.P.56(c), summary judgment is proper once the moving party has established that there is no genuine issue of material fact to be resolved at trial and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552 (1986). A party may not rest upon pleadings to oppose a motion for summary judgment and must set forth specific facts showing that there is a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510 (1986). Thus, Rule 56(c) requires the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element to that party's case, and on which that party will bear the burden at trial. *Celotex,* 477 U.S. at 323.

The substantive law governing the case determines which facts are material. *Anderson,* 477 U.S. at 248. This means that "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* In reviewing motions for summary judgment, courts must view the evidence in the light most favorable to the non-moving party, meaning that any doubt as to the existence of genuine issues of fact will be resolved against the moving party. *Valley Liquors, Inc. v. Renfield Importers, Ltd.,* 822 F.2d 1362, 1366 (7th Cir. 1993); *Sandler Assoc. v. Bellsouth Corp.,* 818 F.Supp. 695, 702 (D. Del. 1993). Therefore, summary judgment is inappropriate and must not be granted where the

2

evidence is "subject to conflicting interpretations, or, if reasonable minds could differ as to its significance." *O'Connor v. Chicago Trans. Auth.*, 985 F.2d 1362, 1366 (7th Cir. 1993).

NYL moves for summary judgment contending that full faith and credit should be accorded to the final judgment in *Willson v. New York Life Ins. Co. and New York Life Ins. & Annuity Group,* Civ. Action No. 94/128704 (Sup. Ct. N.Y. 1996) ("Willson"), thereby preventing the Covered Plaintiffs from bringing this action. Specifically, NYL argues that the release contained in the *Willson* final judgment bars this action. NYL further contends that plaintiffs' claims are res judicata under the approach adopted by New York courts. Finally, NYL contends that the permanent injunction contained in the *Willson* final judgment bars the Covered Plaintiffs from bringing this lawsuit. In opposition to this motion, plaintiffs assert that that the release contained in the *Willson* final judgment does not apply to the claims brought by the plaintiffs in this case, and that NYL is not entitled to summary judgment under the doctrine of res judicata.

## THE COVERED PLAINTIFFS ARE NOT BOUND
## BY THE TERMS OF THE RELEASE

NYL first seeks summary judgment based upon the release contained in the final judgment in *Willson*. NYL contends that because the Covered Plaintiffs had notice and failed to exclude themselves from the settlement, they are bound by the release. According to the terms of the release:

> Plaintiffs and all class members hereby expressly agree that they shall not
> now or hereafter institute, maintain or assert against [NYL], either directly
> or indirectly . . . and release and discharge [NYL] from any and all causes
> of action . . . that have been, could have been, may be or could be alleged
> or asserted now or in the future . . . against [NYL] . . . on the basis of,
> connected with, arising out of, or related to . . . the released transactions
> and servicing related to the released transactions.

3

Class members were defined as "all persons or entities who have, or had at the time of the Policy's termination, an ownership interest in one or more Whole Life policies issued by NYL." The released transactions were defined as those involving "the marketing, solicitation, application, underwriting, acceptance, sale, purchase, operation, retention, administration, or replacement by means of surrender, partial surrender, loans respecting, withdrawal and/or termination of the policies or any insurance policy or annuity sold in connection with, or relating in any way directly or indirectly to the sale or solicitation of the policies." NYL argues that the Covered Plaintiffs clearly fall within the scope of the release as their claims arise out of the "sale, marketing, purchase, administration and servicing of policies and annuities included within the *Willson* class definition."

First this Court does not agree that the allegations in the present action "clearly fall within the scope of the release as their claims arise out of the "sale, marketing, purchase, administration and servicing of policies and annuities included within the *Willson* class definition." To the contrary, it can hardly be said that the alleged forgery and conversion arose out of the administration or servicing, etc. of the plaintiffs' accounts. Assuming *arguendo* that this language could be interpreted to include illegal activity, plaintiffs have set forth many strong arguments in opposition summary judgment based upon the release.

Plaintiffs contend that NYL has not produced anything to suggest that the parties in *Willson* believed the release to be so broad as to cover the very specific instances of fraud and forgery by NYL agents presently alleged. They first suggest that the language of the settlement itself supports this. Plaintiffs argue, for instance, that after "misrepresentation" was defined, it was limited to statements or omissions occurring "at or before the time of sale." Furthermore, they argue that the definition of "released transactions" was limited to "the sale or solicitation of

4

the Policies." Plaintiffs also point to the fact that the notice of the class action stated the nature of *Willson* as alleging "a variety of claims relating to the manner in which such policies were sold."

In further support of their opposition to summary judgment based on the release, plaintiffs contend that NYL's conduct illustrates that it did not originally intend the release to cover allegations of the nature presently asserted. For instance, plaintiffs contend that NYL acknowledged at an early date that plaintiffs' claims center around misrepresentation and misappropriation of funds by Frietag, while failing for some time to raise the argument that these claims are included under the terms of the previous release. Plaintiffs additionally argue that throughout discovery for the present action, plaintiffs sought information common to the *Willson* action. NYL uniformly objected to such requests as "subjects unrelated to David Frietag." NYL did not see this information as relevant to the present action. Finally, plaintiffs point out the fact that the attorney that had represented NYL in *Willson* never asserted in his affidavit that the claims raised in this case fall within the class definition, the settlement, or the release.

The Second Circuit has held that although litigation settlements are able to resolve issues that were not raised in the pleadings, such resolution depends on the intent of the parties. *SEC v. First Jersey Securities, Inc.*, 101 F.3d 1450, 1467 (2nd Cir. 1996). In *W. Alton Jones Foundation v. Chevron U.S.A., Inc.*, 97 F.3d 29 (2nd Cir. 1996), the court held that any language included in the final judgment that included the plaintiffs as class members in the suit were not intended by the parties to have that effect, and denied defendant its sought-after relief. The court noted that the defendant's delay in raising the finality of the previous litigation as a defense was "relevant and persuasive evidence that the parties to this case never considered that [plaintiffs] would be included in the class." *Id.* at 33. The court saw no reason why the defendant would have delayed in raising the defense if it believed all along that plaintiffs had been members of the previous

5

class. The court concluded that defendant "contrived that theory long after the fact to extricate itself from the . . . litigation." *Id.* at 34. The court also looked to the fact that the defendant had taken various positions in litigation that were inconsistent with its assertion that the plaintiffs claims were barred, and that the attorneys in the previous suit had never asserted in their affidavits that the class definition included plaintiffs. Based on this case law, the arguments asserted by plaintiffs raise an issue of material fact as to whether the parties to *Willson* intended to encompass the current claims or whether such argument was contrived after-the-fact.

Plaintiffs additionally assert that summary judgment based upon the prior release is inappropriate because the named plaintiffs in *Willson* were not capable of releasing the claims of the current plaintiffs. This is because, they assert, the Covered Plaintiffs were not adequately represented in *Willson*.[1] Essentially plaintiffs are arguing that applying the release broadly, as requested by NYL, would extend the release's effect beyond the scope which the named plaintiffs in *Willson* were empowered to achieve. Plaintiffs contend that although some of their allegations are similar to those raised in *Willson*, the claims of loss in the present case arise out of the ponzi scheme operated by David Frietag and not out of NYL's fraudulent solicitation practices.

The Second Circuit has held that the named plaintiffs in a class action "cannot represent a class of whom they are not a part," and can only represent a class of whom they are a part "to the extent of the interests they possess in common with members of the class." *National Super Spuds, Inc. v. New York Mercantile Exchange*, 660 F.2d 9, 17-19 (2nd Cir. 1981). This means that named plaintiffs have no authority to release claims beyond those that are common to the class. This is so even though the settlement is fair and reasonable to the class as a whole. The court

---

[1] Factual support for plaintiffs' inadequate representation claim is provided *supra*, on page 9, in its res judicata argument.

noted, "[a]n advantage to the class, no matter how great, simply cannot be bought by the uncompensated sacrifice of claims of members, whether few or many, which were not within the description of claims assertable by the class." In addition, class members are not obligated to do anything during the course of the proceedings. Although they have the option to participate or to opt out, they need not do so. This is because they are guaranteed adequate representation at all times. If this guarantee has not been effectuated, the resulting judgment will not be binding upon them. *See Epstein v. MCA, Inc.,* 126 F.3d 1235 (9th Cir. 1997)(discussing *Phillips Petroleum Co. v. Shutts,* 472 U.S. 797 (1985)). Given this authority, the facts asserted by plaintiffs raise an issue of material fact as to whether the Covered Plaintiffs' claims were effectively released by the *Willson* representatives.

## THE COVERED PLAINTIFFS' CLAIMS ARE NOT BARRED UNDER THE DOCTRINE OF RES JUDICATA

NYL additionally seeks summary judgment on the grounds that the *Willson* Final Judgment is entitled to the accordance of full faith and credit, rendering plaintiffs' claims res judicata. The Full Faith and Credit Clause of the United States Constitution, codified in 28 U.S.C. § 1738, requires that "the judgment of a state court have the same credit, validity, and effect, in every other court of the United States, which it had in the state where it was pronounced." *Underwriters Nat'l Assurance Co. v. North Carolina Life & Accident & Health Ins. Guar. Ass'n,* 455 U.S. 691, 704 (1982). A judgment approving the settlement of a class action lawsuit, like any other final judgment, is entitled to such treatment. *See, e.g., Nottingham Partners v. Trans-Lux Corp.,* 925 F.2d 29, 32-33 (1st Cir. 1991). To comply with § 1738, federal courts must look to a state's preclusion law to determine the preclusive effects of a state court judgment. *Marrese v. American Academy of Orthopaedic Surgeons,* 470 U.S. 373, 381 (1985).

7

Therefore, in the present case, this court must look to New York preclusion law to determine if plaintiffs' claims are barred under the doctrine of res judicata.

Under New York law, the *Willson* final judgment will have preclusive effect on the present action if: (1) the parties in the present action are the same or in privity with the parties in *Willson*; (2) the *Willson* court was a court of competent jurisdiction; (3) there was a final judgment on the merits; and (4) the claims in both suits arose out of the same series of transactions. *See Gramatan Home Investors Corp. v. Lopez*, 386 N.E.2d 1328, 1331 (N.Y. 1979). Plaintiffs allege that summary judgment is inappropriate under the circumstances because the present action does not involve the same parties as in *Willson*, their claims arose out of different transactions, and the court that decided *Willson* would not have been able to grant the relief sought by plaintiffs in the present case.

New York courts have adopted a "transactional" approach in determining whether the requisite factors are present. *See Burgos v. Hopkins*, 14 F.3d 787, 790 (2nd Cir. 1994). For instance, they routinely hold that it is not conclusive that both suits involve essentially the same course of wrongful conduct, or that same parties are involved in both proceedings, or that the facts are similar or overlapping, or that the legal issues are similar. *See, e.g., SEC v. First Jersey Securities, Inc.*, 101 F.3d 1450 (2nd Cir. 1996); *Prime Mgmt. Co., Inc. v. Steinegger*, 904 F.2d 811, 815 (2nd Cir. 1990); *Interoceanica Corp. v. Sound Pilots, Inc.*, 107 F.3d 86, 91 (2nd Cir. 1997). They instead apply a flexible, common sense construction that acknowledges the reality of the situation. *Id.*

New York courts generally apply claim preclusion only where the "transaction or connected series of transactions at issue in both suits is the same." *First Jersey*, 101 F.3d at 1463. They recognize that "two or more different and distinct claims or causes of action may

8

often arise out of a course of dealing between the same parties, even though it is not, except in refined legal analysis, easy to say that a different gravamen is factually involved." *Tucci v. Ambach*, 488 N.Y.S.2d 306, 308 (N.Y. App. Div. 1985). Two transactions are deemed to be the same "where the same evidence is needed to support both claims, and where facts essential to the second were present in the first." *First Jersey*, 101 F.3d at 1464.

Plaintiffs' argument that the two cases involve different parties is based primarily on their belief that the *Willson* plaintiffs did not adequately represent the Covered Plaintiffs in this case. They contend that their representation was inadequate because the *Willson* plaintiffs did not have essential claims in common with the plaintiffs in this case. For instance, they argue that none of the representative plaintiffs in *Willson* had dealings with David Frietag, whose conduct is at the center of the current action. They point out also that none of the *Willson* representatives received fictitious monthly statements from NYL that reflected increasing cash values in their accounts. The current plaintiffs additionally point out that none of the *Willson* representatives alleged that the cash values of their NYL products were raided through forged signatures. Another difference is that none of the *Willson* representatives complained that the cash value of their NYL accounts had been used to pay the premiums on other policyholders' accounts. Finally, the current plaintiffs point out that the *Willson* representatives' claims were limited only to life insurance products and that none of them had alleged that NYL failed to transfer their account balances to Lincoln National Life properly.

The United States Supreme Court has held that to have an effect on absent parties, a prior proceeding would have to be "so devised and applied as to insure that those present are of the same class as those absent and that the litigation is so conducted as to insure the full and fair consideration of the common issue." *Richards v. Jefferson County, Ala.*, 517 U.S. 793, 801, 116

S.Ct. 1761, 1767 (1996) (quoting *Hansberry v. Lee*, 311 U.S. 32, 43 (1940)). It is also important to note the Court's decision in *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 105 S.Ct. 2965, (1985). The Court held in *Shutts* that a class member is guaranteed adequate representation at all times. *Id.* at 2974. If this guarantee has not been effectuated, the resulting judgment will not be binding upon them. Based upon the facts asserted by plaintiffs, *supra*, plaintiffs have sufficiently brought into question the issue of whether the plaintiffs in the two suits are the same such that the Covered Plaintiffs are bound by *Willson*.[2]

Plaintiffs next argue that the two cases involve different transactions under the standards adopted by New York courts. Plaintiffs support their argument by first asserting that the gravamen of their complaint is that they have been victimized by David Frietag's ponzi scheme, involving unapproved money transfers and forgery. They argue that this is distinguishable from the basis of the claims in *Willson*. In *Willson*, NYL's allegedly fraudulent nationwide marketing scheme and company policies were the basis of the plaintiffs' complaint. Although the current plaintiffs do not dispute that some of their allegations are similar to those raised in *Willson*, they contend that the similar facts are merely background information and did not give rise to the current action. As mentioned *supra*, New York courts have made it clear that the presence of overlapping facts is not dispositive in the determination of whether two suits are the same for purposes of res judicata. According to the court in *NLRB v. United Technologies Corp.*, 706 F.2d 1254, 1259-60 (2nd Cir. 1983), "the circumstances that several operative facts may be common to successive actions between the same parties does not mean that the claim asserted in the second is the same claim that was litigated in the first." Therefore, NYL cannot insist on an award of summary judgment on this basis alone.

---

[2] Secondarily, plaintiffs contend that David Frietag was not a defendant or in privity with NYL in the *Willson* action. We find this argument unpersuasive.

Plaintiffs next allege that the evidence needed to establish the two cases is different, and that the facts essential to the instant case were not a part of the *Willson* case. They assert that the evidence needed to prove the allegations in the instant case include the allegedly false account statements, copies of forgeries by Frietag done while working as an agent for NYL, and evidence relating to the unauthorized transfer of money between NYL policy owners. This, they argue, is very different than the evidence needed to show that NYL employed fraudulent company-wide solicitation policies. We agree. Plaintiffs, they point out that the *Willson* case dealt with facts that centered around the initial sale of life insurance policies, while the facts essential to this case deal with conduct occurring after the initial sale of the products. In determining whether the essential facts are the same, New York courts look to see if the facts underlying both suits are "related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understandings or usage." *Interoceanica,* 107 F.3d at 90. Applying the facts asserted by plaintiffs to this test, it is clear that plaintiffs have also raised a genuine issue of material fact as to this issue.

Finally, plaintiffs argue that summary judgment on the issue of res judicata is inappropriate because the New York court hearing the *Willson* action would not have been able to afford the full relief sought in the present action. They assert that the New York court could not grant them the relief they sought under the federal RICO statute. New York case law holds that res judicata does not apply where the first court was incapable of granting the full measure of relief sought in the later case. *See Burgos v. Hopkins,* 14 F.3d 787 (2nd Cir. 1994). Because the New York court clearly could not have granted the RICO relief sought by the plaintiffs in the current action, plaintiffs have sufficiently met their burden to prevent summary judgment on this ground.[3]

---

[3] This Court finds it irrelevant that the plaintiffs' RICO claim has since been dismissed with prejudice.

## PLAINTIFFS ARE/ARE NOT PERMANENTLY
## ENJOINED FROM PURSUING LITIGATION

Finally, NYL seeks summary judgment on the grounds that the Covered Plaintiffs are permanently enjoined from pursuing litigation against NYL. The permanent injunction in the *Willson* settlement states:

> All Class Members are, from this day forward, hereby enjoined from: (a) filing, commencing or prosecuting any lawsuit; or (b) participating as a class member in any class action against New York Life in any jurisdiction based on or relating to the facts and circumstances underlying the claims and causes of action in this action, or to the Released Transactions (as that term is defined in the Settlement Agreement).

NYL contends that the Covered Plaintiffs' claims fall within the prohibitions of this injunction and that this Court should exercise its discretion to give it effect. Because of the numerous issues left to be resolved that would be relevant to this Court in its consideration of whether to exercise its discretion, a grant of summary judgment cannot be awarded at this time.

## CONCLUSION

Because plaintiffs have raised an issue of material fact as to whether the Covered Plaintiffs' claims are covered by the release signed by the *Willson* representatives, NYL's motion for summary judgment with regard to the release is denied. Because plaintiffs have raised a genuine issue of material fact as to whether prerequisites for a finding of res judicata under New

York law have been met, NYL's motion for summary judgment on the ground that the Covered Plaintiffs' claims are barred is denied. (#65). Trial is hereby set forth for July 30, 2001, at 9:30 a.m..

**SO ORDERED**

ENTERED: 3/19/01

*Ronald A. Guzman*
HON. RONALD A. GUZMAN
**United States Judge**